IN THE DISTRICT COURT OF THE UNITED
STATE DISTRICT OF DELAWARE

KEVIN L. WASHINGTON, #211354

**ORIGINAL**

V.

Thomas Carroll,
Warden, D.C.C.

NO# 05-838



RECEIVED
DEC 5 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

M. Jane Brady
Attorney General,

Memorandum of law in support of
movant motion for habeas corpus review
Pursuant to 28 u.s.c. 2254.

DATE: 11/28/05

Respectfully submitted
Kevin L. Washington
Kevin L. Washington.
#211354
1181 Paddock road
Smyrna, De 19977

# Table of contents

Pages

Foreword . . . . . . . . . . . . . . . . .

Background . . . . . . . . . . . . . . . . . B-1 thru B-3

Table of Authorties . . . . . . . . . . . . 1

Table of Citations . . . . . . . . . . . . 2

Summary of Arguments . . . . . . . . . . . 3

Arguments . . . . . . . . . . . . . . . . . 4 thru 23

Conclusion . . . . . . . . . . . . . . . . 24 thru 25

The movant files this petition for review in the interest of Justice as I have in my last motion, Dated, October 29, 2004.

Movant prays that the reviewing Justice will carefully review the petition to the letter of the law. The lower courts has a copy of the indictment that have striking similarities concerning the states attorney General Robert Goff "Hand-writting" and the "Hand-writting of the alleged "Grand Jury" foreperson. Being in a restricted area at Delaware Department of correctional center, I sent Honorable Judge Jame T. Vaughn the only copy of the false indictment, on December 29, 2004 complainting about the revelation of injustice that took place during the procedure of this case, mailing proof of this document can be founded within Superior court docket sheet, see (page (14) #130 and event date - 1, 3, 2005, address to the Honorable Judge Jame T. Vaughn.

Movant as well as his family has tried Numerous times to purchase copies of the above document, only to be told for months that were Not allowed anything from movant case file.

Which violates the 1979 Freedom to infor-
-mation Act.

Therefore movant pray's the reviewing Justice would afford him a fair review and-

— rule on this matter according to the law that was set inplace by our fore fathers.

Thanking you inadvance for your time and concern.

Background

On February 27, 1995 Wilmington police responded to 829 East 26th street where they formed a crime report against the defendant Kevin L. Washington on a miscellaneous incident, base on the allegation received from cynthia washington. (see Exhibit A-208____, of appendix).

On March 18, 1996, and supposed "True Bill" was pass down by the supposed "Grand Jury" which was followed by a "Rule (9) warrant Dated March 26th 1996.

On August 1, 1996 Wilmington police came to "Gander Hill prison" and re-arrested the defendant who was already in prison on unrelated charges. And charged defendant with the following: Three counts of unlawful sexual intercourse first degree. 11. Del.c. 775 (a)(4), and, one count of unlawful sexual penetration third degree, 11 Del.c. 779 (a)(2).

On April 30th 1998 defendant Kevin L. Wash-ington was found quilty of "Two counts of unlawful sexual intercourse first degree," one count of unlawful sexual penetration third degree, as well as quilty of the lesser included offense of unlawful sexual contact second degree.

On September 18, 1998, defendant was sentence to a total of (23) years of level (5) imprisonment and (1) year of level (4) confinement, by superior court "Honorable Judge Richard R. cooch."

B-1

On Normeber 17, 1998 defense counsel J. Dallas Winslow Jr. filed a direct appeal on behalf of defendant, under a rule 26 (c) See Superior court criminal docket page (6) #(65).

On February 15, 1999 received a letter from counsel J Dallas Winslow Jr., stating in reviewing the defendant transcript he couldn't find any legal issues for appeal. But this was an opportunity for defendant to let supreme court know what I consider legal issues See Exhibit, A-1 thru A-2

On march 9, 1999 defendant wrote a letter to counsel J. Dallas Winslow Jr. with the following Grounds, See Exhibit, A-1 thru A-2

On may 12, 1999 Honorable Judge Norman A. Barron, order: Appointment of counsel, Joseph A. Gabay, ESQ, To represent defendant.

On December 22, 1999 Counsel Joseph A. Gabay filed a supplemental memorandum on behalf of the defendant, See Exhibit, A-8 thru A-12

On march 24, 2000, a mandate was filed from supreme court - Affirming the Judgement of the superior court, See superior court criminal docket page (8) # (84).

On September 17, 2001 defendant filed his first motion for postconviction relief, Rule 61 raising. Five Grounds, See Exhibit, A-26 thru A-44

On october 9, 2002 defendant filed his second motion for postconviction relief rule (61) raising, three grounds. See, (Exhibit A-57 thru A-65

On october 29, 2004 defendant filed his third motion for postconviction relief rule (61) raising three grounds: See, (Exhibit A-101 thru A-116

Table of Authorities

Rules, constitution and provisions. ETC.

Fed. R. crim. proc. rule 6(d)(1) and Rule 6(f).
Del. crim. Rule 6 (d,f).
Title 11 Del. c. 4505.
AbA standard 3-3.5 (c).
Rule 33
Super. ct. crim. Rule 61(i)(4).
Super. ct. crim. Rule 61(i)(5).
Fifth Amendment.
D.C.2. P.C.
A.E.D.P.A.
U.S. C.A. 6

i

Table of Citations

Gaither v. U.S. 413 F.2d 1061

U.S. v Bayance 399 F.2d 372

Jencks v. United States 657. 77 S.ct

Ex parte Bain 7 S.ct.

In re Jessup 136 A.2d 207.

Government of Virgin Islands v. Joseph 765 F.2d 394

Brown v. Ohio, 432 U.S. 161, 164-69, 97 S.ct 2221, 2224-27,

53 L.Ed. 2d 187 (1977).

Blackburger v. U.S. 52 S.ct. 180.

U.S. v. Lampley 573 F.2d 733, 789-90 (3rd Cir.).

Aquino, 378 F.2d at 554.

Bedford 671 F.2d at 765-66.

U.S. v. Johnson, 319 U.S. 503, 63 S.ct 1233, 87 L.Ed. 1546,

43-1 USTC p 9470 (U.S. Ill, 1943).

Melendez v. State of Delaware, 2003 WL 23095688 (Del. Super.)

Michaels v. State of New Jersey 625 A.2d 489

Summary of arguments

Ground (1) Lack of the production of the grand Jury minutes by stenographer recording thereby violated, Fed R. Crim. Proc. Rule 6(d)(1) and Del. C. Crim. Rules 6(d), which futher ~~was~~ violated the due process rights under U.S.C.A. const. Amendment 5

Ground (2) Prosecutionary misconduct when the allterd falsification and production of an indictment by means of the use of forgery - Attorney General Robert Goff.

Ground (3) Ineffectoue Assistance of counsel

Ground (4) Judicial abuses of discretion.

## Ground 1

Lack of the production of the grand Jury minutes by stenographer recording there by Violated, <u>Fed. Crim. proc. Rules 6 (d)(1)</u> and <u>Del. Crim. rules 6 (d)</u> which futher Violates the Fifth Amendment, which guarantees that prosecutions for serious crime may only be instituted by indictment <u>U.S.C.A. const. Amend. 5</u>

## Standard Scope of review

The rules and procedures held within, <u>Fed. Crim. proc. rules 6(c),(f)</u> and <u>Del. Crim. rules 6 (c),(f)</u> "emphasize's" the requirements grand Juror's Foreman, must find every indictment by at least 12 grand Juror's Also, see, <u>Title 10 Del.c. 4505</u>.

## Arguement 1

The movant hereby asserts In the melendez case, Superior court, states the following: As the state correctly notes, "Grand Jury proceeding are not recorded and therefore it is not possible to produce a transcript of the grand Jury proceeding which resulted in the indictment. All grand Jury proceedings are to be recorded by stenographer means for a collection of different reasons. <u>Fed. Crim. proc. rules 6 (d)</u> and <u>Del. Crim. rules 6 (d)</u>. The First is to show that a grand Jury hearing was indeed held. Second that the grand Jury had the required number of Juror's that is emphasize in <u>Fed. Crim. proc. rule 6 (c)</u>

and Title 10 Del. c. 4505. third deals with the
testimonys and evidences which were presented to
the members of a grand Jury, because when the
testimonies or productions of evidence given in
front of the grand Jury are not consistent
with those Presented during trial proceeding. The
Non-recording of grand Jury proceedings "Deny's"
the accused or counsel the ability to effectively

impeach or cross-examine witness's or challenge
the charges housed within, pieces of evidence,
U.s. v. Bopaner 329 F. 2d 372, Joncks v. united States
657, 22 s.ct. finally the recording of such minutes
guarantees that any challenges upon the appeals process.
which address possibilities that an indictment was
falsified or illegally produced, would be validated
when such transcripts are released to refute those
claims. (under ABA Standard 3-3.5-(c) The prosecutor's
communications and presentations to the grand Jury
should be on the record).

In the instant case the movant raises
challenges that the prosecution forged and thereby
falsified an indictment inorder to secure Jurisdiction
to prosecute the accused. Fed. crim. proc. Rule 6(b) and
Del. crim. Rule 6(b). Had the grand Jury proceeding
been recorded, the State and reviewing Justices could
have blacken out the names of the anonymous
persons who were present or participated and
produced the minutes to show that there was
infact a grand Jury held.

that the alleged foreperson who's name appeared on the alleged indictment was infact present, and that the required number of Juror's voted and handed down an indictment according to, Fed. crim. proc. Rule 6(c), Del. Crim. Rule 6(c), and Title 10 Del. c. 4505.

Futher those alleged grand Jury minutes should be given to the defendant for the following reasons: 1) on the second day of trial the alleged victim testimony change so drastically that superior court Judge Richard R. Cooch calls for a side-bar with Deputy Attorney General "Robert Goff" and defense counsel J. Dallas Winslow Sr., upon re-turning from side-bar, Judge Richard R. Cooch turned to the Jury and said as of counts(1) and (3) charge the defendant with unlawful sexual intercourse first degree so also does count(11), but i will separately instruct you on that count. all this transpired after the alleged victim "Tierra L. Battles stated that count (3) didn't happen, see, (appendix, Pg 105-106) right after the recantation in testimony the courts instructed the Jury on lesser-included offense for count(1) and (3), request unlawful sexual contact second degree. How do you get a lesser included offense when the state witness said it never happen"? How could unlawful sexual contact second degree, be a lesser-included offense of unlawful sexual intercourse first degree? when The court of appeals, Becker, Circuit Judge, held that: (1) third degree rape, which requires proof that victim was over (14) but under (16) years of age, is not a lesser included

offense of first-degree rape, which contains no age element. Citing. Government of Virgin Islands v. Joseph 765 F.2d 394.

Therefore unlawful sexual contact second degree is not a lesser included offense of unlawful sexual intercourse first degree, because it require proof of additional elements that are not required in unlawful sexual contact second degree. "A lesser included offense is one that does require proof of any additional element beyond those required by the greater offense; elements of offense are compared in the abstract, without looking to facts of particular case."

## Ground 2

Prosecutionary misconduct when the alleged falsification and production of an indictment by means of the use of forgery.

## Standard scope of review

Violations of Fed. Crim. proc. rule 6, supr. ct. Crim. Rule 6 and U.S.C.A. 5, were perpetrated by the prosecuting attorney Robert Goff, when the indictment which procured jurisdiction used to try and convict the accused was forged by the Deputy Attorney General Robert Goff.

## Argument 2

The movant hereby raises the assertion that the state's prosecuting attorney Robert Goff, forged the signature of a supposed grand Jury fore person for the express purpose of securing Jurisdiction to try the accused.

This made more egregious when the state's attorney Robert Goff used such tactics to try the movant after an unreasonable passing of time between the time of the accusation and the time the prosecutor allegedly gained an indictment. The allegation was made on February 27, 1995 and the supposed indictment was handed down on March 18, 1996, one year and eighteen days later, see Appendix, pg. A-208 crime report.

Once the movant was reviewing his case file movant noticed the copy of the indictment provided him in accordance with Del. Supr. Ct. crim. Rule 16, did not possess case numbers on each count charged.

The movant then requested copies which included the missing information. upon recieving the requested copies, the movant used them for his immediate needs.

During the movant reviewing of his case October of 2004 he noticed the similarities between the states attorney Robert Goff hand-writing and that of the alleged grand Jury fore person.

The signature of foreperson on original alleged indictment, did not match the signature

of the foreperson on original alleged indictment did not match the signature of the foreperson on the copy of the alleged indictment, and therefore brought forth the violations which could not have been realized by reasonable exercise of Due diligence.

The movant trusted that the Justices and officers of the court would have conducted themselves in a professional manner in accordance with, Fed. crim. proc. rules. ABA standards for Criminal Justice, D.L.R. p.c. and those ethics proscribed by the U.S. constitution, and therefore protect the Due process rights of the accused under U.S.C.A. 5. For those reasons the movant must raise the violations and pray for review in the interest of Justice.

The movant was housed in an area where he felt it would have taken an excessive amount of time to get copies returned from the "MHU" law library, causing the movant to send Exhibit A-1 with a letter to the Honorable Judge, Jame T. Vaughn See Appendix Docket Sheet pg 14 Docket number 13a, Entry date January 05, 2005 and mailing date, December 29, 2004. Which was sent to show the forgery and falsification of the indictment by the prosecutor in an attempt to proffer the claim and substantiate a reason for the court to release the minutes of the supposed grand Jury hearing. See In Re Jessup 136. A.2d 202.

The movant has been requesting a copy of the <u>letter</u> and attached <u>exhibit A-1</u> for the past five months, only to be denied access by the prothonotary, stating that nothing was being released from the movant case file. The movant family members have repeatedly attempted to purchase the specific documents mention above, but have also met with resistance in obtaining anything from movant case file. <u>Exhibit A-1</u> should be viewed within the case file, herein the movant also request again that a copy of the <u>correspondence</u> and attached <u>exhibit A-1</u> be sent to him.

This brings the movant to assert that this type of evidence falls within <u>Rule 33</u> but however there has been a history of using the format under and within Del. supr. ct. crim. Rule 61, to bring about review. The movant brings forth the position that in as much as the evidence is newly discovered, because of its ability to be hidden, the violation and misconduct is merely the beginning, this is being proffered to challenge the validity of the indictment and should be considered as a specific showing of reason why the grand jury minutes should be released.

The argument in its self is simple, the evidence shows the forgery and falsification of the indictment by the prosecutor, administering doubt that any grand jury proceeding was held, that the required amount of grand juror's voted to hand-

- down an indictment, see Fed. R. Crim. rule 6 (c) and Title 10 Del.c. 4505, and that indictment was returned in front of a magistrate or any other Justice, Fed. R. Crim. proc. Rule 6 (f) and Del. crim. Rule 6 (f).

The movant has rendered specific reasons to release the grand Jury minutes in order to refute his claims of Due Process violations of U.S.C.A. 5, and thereby leaving trial court to prove that they indeed possessed Jurisdiction to convict and punish accused.

The Superior court reviewing Justice states that the claim of prosecutorial misconduct was formerly adjudicated. Super. ct. Crim. Rule 61 (i)(4) as an argument title this is correct, but the merit and ▓▓▓▓ reason for that title is unique and different, therefore this argument should be reviewed and addressed on its own merits. see appendix A-26-116, because the reasons for bringing these claims could not be realized through the reasonable exercise of Due diligence, and constituted a gross miscarriage of Justice, thereby challenging the validity of the indictment used secure Jurisdiction to try the accused, the claim should be reviewed by this court de novo.

The movant raises a colorable claim that due to the prosecuting attorney forging and falsifying an indictment without a grand Jury hearing being held, affectively challenges the due Process rights being violated in a manner which queries whether the court possessed Jurisdiction

to try and convict the accused. See, <u>Del. Supr.</u> <u>ct. crim. Rule 61 (i)(5).</u> which provides that the bars to relief in paragraph (1),(2) and (3) of this subdivision shall not apply to a claim that the court lacked Jurisdiction or to a colorable claim that there was a miscarriage of Justice, because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the Judgment of conviction. To violate the constitutional rights of due process under <u>u. s. c. A. 5.</u> by not presenting the evidence to a grand Jury comprised in accordance with, <u>Fed. crim. proc. Rule 6 (f)</u> and <u>Del. crim Rule 6 (f).</u> having those members return an indictment under that rule and an officer of the court falsifying and forging the documents required to secure Jurisdiction to try and convict the accused, Amounts to a significant colorable claim that no Jurisdiction was held leading to a fundamental miscarriage of Justice that undermined the legality, reliability, integrity and fairness of due process and proceedings leading to a conviction. see, <u>u. s. c. A. 5 citing</u> <u>united state v. sansone 380 us. 343</u>

## Ground 3

Ineffective Assistance of counsel

## Standard Scope and review

Trial counsel representation fell short of reasonable standard when not requesting by instant motion, a dismissal of charges, and further request clarification about the reason for amending the charges.

## Argument 3

The movant wishes to raise the assertion within the realm of the united state District court for Delaware, that it was ineffectiveness of counsel to fail to request a dismissal of the chargings against his client after the state witness testified that no crime was committed as of Count(3) see Appendix A-105 and A-106 which also brought about reasonable doubt as to count(1) of the supposed indictment in the mind of the reviewing Justice, because immediately after the recanted testimony, the reviewing Justice and both state and defense attorney went into discussion concerning a lesser included offense's for count (3) and (1) see. Appendix A230 thru A232

During the commencement of the trial all legal parties including counsel acting

on behalf of the accused agreed there would be no need for special instructions to Juror's See, Appendix A- page(6) of the condensed sheet.

But in fact unlawful sexual contact second degree cannot be a lesser included offense of unlawful sexual intercourse first degree, because a lesser included offense is one that does not require proof of any additional element beyond those required by the greater offense, see, Government of Virgin Islands v. Joseph. 765 F.2d 394. Also Brown v. Ohio, 432 U.S. 161 (1977). The elements of the offense are compared in the abstract without looking to the facts of the particular case.

Therefore unlawful sexual contact second degree, cannot be a lesser included offense of unlawful sexual intercourse first degree, Inherently if because of changes in testimony the court felt compelled to adjust the nature of the charges or offense's, counsel should have moved for a dismissal or immediate instructions to the trier of fact about the reasons for any amendments. doubts by the court which lead to the amendment of counts (1) and (3) should have affected all counts,

Consideration in dealing with the lesser included offense's are that if the

14

recantation during trial testimony were such that caused enough doubt in the original charging's the jury should have been instructed about the attachment of double Jeopardy when the same elements are used to prove other greater offense's, and that a lesser included offense is one that does not require proof of any additional element beyond those required by the greater offense. Clearly second degree unlawful sexual contact is not a lesser included offense of unlawful sexual intercourse of first degree. pursuant to Fed. rule Crim. proc. rule 7 (e) Which permits court to amend information at any time before verdict if substantial rights of defendant are not prejudiced, because variance between information and conviction prejudiced defendants substantial rights by not giving him opportunity to prepare adequate defense to charge of unlawful Sexual contact second degree a strict liability offense (11 Del. c. 1953 §§ 761, 762). for the above reason it was ineffective assistance of counsel to not move for a dismissal of charge's upon state's witness recanted testimony during trial.

In conclusion the prejudices suffered in order to fulfill the Strickland standard was that the recanted testimony led the court to issue lesser included offense's of Count (3) and (1) without instructing the jury about the reason for

those actions.

above pretrial contentions by all officers of the court that no special instruction were necessary, because it's not an ██ alibi defense. See, Appendix A-209 page(6) of condenseit sheet Page (6).

It's the position of the movant that the same elements used to prove the lesser included offense were also used to constitute the greater offense without proper separation attaching double Jeopardy.

## Ground four
Judicial Abuses of discretion

## Standard scope and review

The trial Justice Honorable Judge Richard R. Cooch abused his discretions in manners which denied the accused a fair trial process.

## Argument 4

The movant asserts the position that the trial Justice abused his discretions by first introducing lesser included offense's after the alleged victim gave recantive testimony on the second day of trial. The introduction was done after the reviewing Justice and all the legal representatives agreed there would be no need for any special Jury instructions. See, Appendix A-209 page(6) of condenseit sheet.

Futher once the trial reviewing Justice felt compelled to adjust or amend the offenses charged. It is the contention of the movant that immediate instructions should have been issued about the reasons for the lesser included offense.

The issuance of the lesser included offenses, unlawful sexual contact second degree cannot properly be a lesser included offense of unlawful sexual intercourse first degree, because the attachments used vary when the elements of the offense difference, therefore are unable to be utilized, see, Government of Virgin Islands v. Joseph. 765 F. 2d 394, Braw v. ohio 97 S.ct 2221, 2224-27 and Blockburger v. u.s. 52. S.ct 180. The elements of the offense's are to be compared in the abstract, without looking to the facts of the particular case, see U.s. v. Lampley 573 F. 2d 783, 789-90 (3rd cir.)

If the Justice was compelled sua sponte to lessen the possibility of the offense's charged, due to recantive testimony the reviewing Justice had the duty to inform the triers of facts about the reasonings for such actions so they might understand that reasonable doubt about the veracity of accusations was the reason for the amendment. The Juror's should have been informed that the lesser included offenses should not be viewed as an endorsement of the prosecution nor the defense, and that each count needs to meet with the elements or criterion

of the statute beyond a reasonable doubt.

When the Jury was not immediately informed about the courts reasoning.

It very likely seemed to aggravate or inflame the prejudices of the Jury. which push bias upon the Jury with confusion of the issues of what constituted the statutes and their essential elements.

There can be no question that by not permitting movant the opportunity to prepare an adequate defense, for the allege lesser included offense second degree unlawful sexual contact for counts 1 and 3, (class 6 felony), variance between indictment and verdict violates defendant's fundamental under U.S.C.A const Amend 6. to be informed of nature and cause of accusation against him. and a verdict founded upon a crime not charged must be set aside. Aquino 378 F.2d at 554. and Bedford 671 F.2d at 765-66

Upon this recantation the reviewing Justice and Judicial officials of the court stop trial. Called "side-bar" without stenographer once the reviewing Justice, states attorney and defense counsel finish there meeting. a discussion begin concerning lesser included offense's, unlawful sexual contact second degree for counts (3) and (1). See, Appendix A-230 thru A-232 being that the states entire case was base on hearsay, defense counsel should have move for a dismissal

18

of counts (3) and (1) upon the recantation
of the states primary witness.

Reviewing Justice granting lesser
included offenses for prosecution, defense counsel,
and that false and misleading opinion of hired
medical expert DeJong before the jury, was
infact plain error amounting to a manifest
miscarriage of justice, and violates movent
constitutional rights of a fair trial, see
michaels v. state of new jersey 625 A.2d 489.

<u>Ground 5</u>

Doctor DeJong testimony given during trial was out-side the clearly settled norms of medical expertise by such a degree as to amount to the giving of false, misleading and perjurious testimony.

<u>Standard scope of review</u>

The medical Expert testimony given during the movant's trial was so misleading and false, there by perjurious that affected the substantial rights of a fair trial under <u>U.S.C.A.6.</u>

<u>Argument 5</u>

The movant brings forth the assertion that the medical report clearly stated there was "no Physical evidence" of "Sexual abuse", "Vaginal nor anal" The Report was inconclusive and for what ever reason, Doctor "Katz" didn't come to court on behalf of the state. Doctor DeJong thi-physician hired on behalf of the state gave such false and misleading testimony that it affected the substantial rights of a fair trial. See, <u>Appendix A-210 thru A-228</u>, especial <u>Appendix A-220 thru A-222,</u> this testimony was so far outside, Clearly established medical

20

Norms of the American medical association, that to state, that an individual such as a child could suffer injuries in genital and anal area, and it would heal quickly because the genital and anal area has the best blood supply, making healing more quickly. Doctor Dejong stated that a child could be penetrated whether it be genital or anal, after a period of a week or two there would absolutely be no signs of trauma or sexual abuse, to substantiate an allega-tion which had no physical evidence medical Expert Dejong basis of evidence by testifying in a misleading an false manner, so affected the movant substantiated right to a fair trial that it amounts to a manifest miscarriage of justice. Citing, Powell V. State, Del. supr, 527 A.2d 276 (1987). Wheat V. State Del. supr, 527. A.2d 269 (1987). Which clearly states, that the State must provide notice of its intention to use an expert witness in a child sexual abuse case sufficiently in advance of trial to enable defendant to prepare to cross-examine the witness. According to superior court criminal rule 16 (a) (2). Which was never done during the process of this case. See, Appendix A-213. The defense attorney had the obligation to refute such testimony upon cross-examination, but failed

21

to do so just as the states attorney has the duty to impeach testimony that they know or suspect to be false or misleading. see Abid Standards for criminal justice 3-3:6. This case is substantialy similar In both case's the only witness to the alleged abuse were it's alleged victim and defendant.

And there was no substantial Circumstantial evidence of abuse, when a sex abuse case boils down to such a credibility contest, "Physical evidence will often be important.

Indeed many sex abuse case's are closed on the evidence Swafford v. Dobucki, 137 F.3d 442, 443 (7th cir 1998).

In the absence of the above facts, the Judicial official had the obligation to act sua sponte in order to protect the accused persons constitutional rights. for these reason the plain errors allowed to occur beg for review de nova. During the direct appeal Process when the movant counsel requested grounds the movant wished the courts to consider, see Appendix A-1 thru A-2.

Therefore the movant here by brings this for further review by this review Justice upon habtes corpus.

22

The states case was significantly shaken when the states primary witness recanted her testimony the second day of trial stating that Count 3 never happen beyond an already circumstantial case, this is important, because the testimony of testifying Expert physician and his improper comments/opinion about a lack of physical Evidence of trauma was consistent with medical report, but he went on to say that and adult male can penetrate a child and because of the rich supply of blood within the genital an anel area, within one or two week there wouldn't be any physical finding of sexual abuse, see, Appendix A. 216, -228 A. -230, -232

That statement took on a significant role in the trier's of facts determination. The drastic portion of that testimony was when Dejong testified that an injury stemming from pentration could heal over the period of a week or two, and be undetectable.

To assert the medically unfound opinions which took on Even greater siginificane because there was no physical Evidence of any kind to support the state case of sexual abuse.

And the complainant testified upon the stand that count 3 alleged priorly in fact did not happen at all,

23

## Conclusion

The movant hereby respectfully requests that this honorable court review this application and it's memorandum of law De novo because of the manifest miscarriage of Justice which were allowed to occur and because the penalties that were handed down were so great and lengthy. "The A.E.D.P.A. has stated that any crime punishable by a death sentence or any infamious crime should be granted adequate review to assure that no person is held in violation of the U.S. constitution, or laws or treaties."

The egregious bad faith acts perpetuated by the State's Attorney "Robert Goff," led to a false and faulted Indictment used to secure a conviction.

Once testimony given upon the stand raised doubts about the veracity of the alleged acts, the court and it's officers concluded that lesser included offense's were needed to secure convictions. See, Appendix A-230 thru A-232.

The officers of the court and Justice then admit that the counts (1) and (3) are similar see Appendix A-231 thru A-232. thereby bringing multip--licity and double Jeopardy into view.

But the offense's, the court and officers claims are lesser included offense's, infact are not in accordance with clearly settled, laws/rules/ and Statutes, SEE, Government of Virgin Island v. Joseph 765 F. 2d 394

These were furthered by false, misleading and prejudicial medical testimony given by a hired physician, since the actual examining physician refused to give in-court testimony beyond those held within the medical report. See Appendix A-215 thru A-228, for hired physician testimony. For the reasons set forth within this application and memorandum movant prays for a fair review of the merits brought forth herein

Respectfully submitted

Kevin L. Washington

KEVIN L. WASHINGTON
#211354
D.C.C.
1181 Paddock Road
Smyrna, Delaware 19977

DATE: 11/28/05

POINTS THE APPELLANT WISHES THE COURT TO CONSIDER

Letter dated 3/9/99

1.  Counsel failed to adequately consult with his client
    concerning his case.  (A).  Counsel never sat down
    with client and review Rule(16).  (B).  Counsel
    never met over State's evidence with client.

2.  Counsel willingness to accept the States version of
    facts, failed to file any motion, because he relied
    on the governments version of facts and not based on
    his own reasonable investigator US v. Matos, 905
    F.2b 30 (2nd cr 1990).

3.  Counsel failure to raise issue of insufficient
    evidence at the end of trial or move for dismissal
    based  on  insufficient  evidence.   Constituted
    ineffective assistance of counsel.  Holse law v.
    Smith 822 F.2b 1041 (11th cr 1987).

(Legal Issue):  With State's case that were not
adequately investigated nor challenged!

1.  No physical evidence of sexual abuse, vaginal nor
    anal.

2.  Defendant tested positive for S.T.D. - syphillis
    from 1991-1996, which is on record at gander hill
    prison.    If  the  mother  Ms. Washington tested
    positive with syphillis, and with the claims of the
    State against the defendant why didn't Tierra
    Battles test positive for S.T.D. syphillis?  Doctor
    Report Rule (16).

3.  No medical expert on behalf of defendant to bring to
    light the importants of States experts witness
    findings that were favorable to defense!

    A.  No testimony of alleged victim for presence of
        S.T.D. syphillis.

    B.  The State must provide notice of its intention
        to use such a witness sufficiently in advances
        of trial to enable the defendant to prepare to
        cross-examine the witness!  (The defendant
        never received notice of expert witness being
        use at trial on behalf of the State!

    C.  No objection to State's arguments based on

14

A-1

physical abuse against ex-wife that went on
during the time the defendant was on the stand
and closing arguments.

Evidence of prior criminal act's must meet the threshold
test of "relevancy" ie, the unchanged misconduct must be
logically related to the material facts of consequence in
the case.  Rules of Evid, Rules 401, 404(b) Del.C. Am

Evidence of acts of physical abuse by defendant against
his wife was/or is inadmissible.

Respectfully,


Kevin L. Washington, Sr.

15

A-2



IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN L. WASHINGTON,              §
                                  §
            Defendant Below,       §
            Appellant,             § No. 421, 1998
                                  §
    v.                            § Court Below: Superior Court
                                  § of the State of Delaware in and
STATE OF DELAWARE,                § for New Castle County
                                  § Cr.A. Nos. IN96-03-0732
            Plaintiff Below,       § through 0735
            Appellee.              §

            Submitted: February 15, 2000
            Decided:   March 3, 2000

Before WALSH, HOLLAND, and HARTNETT, Justices.

## O R D E R

This 3rd day of March, 2000, upon consideration of the briefs of the

parties and oral argument, it appears to the Court that:

(1)    The appellant, Kevin L. Washington ("Washington") was

convicted following a jury trial in the Superior Court of two charges of

Unlawful Sexual Intercourse First Degree, one charge of Unlawful Sexual

Contact Second Degree and one charge of Unlawful Sexual Penetration Third

Degree. Initially, Washington's trial counsel filed a Rule 26(c) brief together

with a motion to withdraw as counsel. In response, the State filed a motion

to affirm. Thereafter, this Court entered an order denying the motion to

affirm and appointed new counsel to review the file and brief the appeal.

A-3

Washington now asserts three claims of plain error: (i) admission of evidence of marital abuse concerning the victim's mother; (ii) admission of bad character evidence in the State's case-in-chief; and (iii) insufficient evidence to convict as to the charge of Unlawful Sexual Contact.

(2)    The charges against the defendant involved alleged sexual assaults against his then eight-year-old daughter.[1] The charges came to light when the victim related the incidents to her mother, the defendant's former wife. The child later repeated the allegations to the police and to a social worker. The child and her mother testified at trial recounting the assaults and the child's out-of-court statements were admitted in evidence under 11 *Del. C.* § 3507. Although the State presented the testimony of an examining physician, that evidence was inconclusive on the question of physical manifestations of sexual abuse. The defendant denied the assaults and claimed that the charges were prompted by the vindictiveness of his former wife.

(3)    The defendant's apparent tactic at trial was to portray his former wife as vengeful and motivated by an effort to get rid of him by manufacturing the charges involving their daughter. The defendant's counsel suggested this motivation in opening remarks before the State's case and

---

[1]The record is conflicting as to whether the defendant is the biological father of the victim or merely the victim's stepfather. Such a determination, however, is irrelevant to the factual and legal issues at hand.

pursued this claim in cross-examination of the defendant's former wife when she testified in the State's case-in-chief. Specifically, counsel asked the wife if she "wanted [the defendant] out of your house, out of your life; right?" When the wife replied in the affirmative, counsel then asked if she had contacted the defendant's probation officer to report a violation and whether she had written to a Superior Court judge expressing her fear of the defendant and her wish that he remain in jail. The wife confirmed such conduct. In re-direct examination of the wife, the prosecutor followed up on her desire to get rid of the defendant by asking whether he had been physically abusive to her during the marriage and whether he had pled guilty in the Family Court to third degree assault. There was no objection to this questioning.

(4)    Washington concedes that in the absence of an objection to the State's exploration of his "bad acts" on re-direct examination our review of the admission of that testimony is limited to a plain error standard. Under a plain error standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *See Wainwright v. State*, Del. Supr., 504 A.2d 1096, 1100 (1986). Here, not only was there no objection to the wife's recounting of the defendant's abusive conduct toward her, but the testimony was simply an embellishment of the defendant's effort to depict the stormy relationship with

3

A - 5

his wife as motivation for her reporting of the incidents involving her daughter. While the State is generally precluded from presenting evidence of the defendant's bad character in its case-in-chief, *See Getz v. State*, Del. Supr., 538 A.2d 726 (1988), if such evidence is merely responsive to a defendant's suggestion or admitted in rebuttal, the admission of that evidence is not subject to blanket proscription. *See Kornbluth v. State*, Del. Supr., 580 A.2d 556, 558 (1990). In any event, there must be a contemporaneous objection to such evidence to afford the trial court the opportunity to perform the balancing test under D.R.E. 403 and to craft an appropriate instruction. Here, there was no objection and, under the circumstances, the admission of such evidence does not rise to the level of plain error.

(5)    Washington also alleges as plain error certain testimony elicited from his former wife by the State concerning the fact that he was unemployed during the period when the alleged assaults occurred. Lack of employment is not, in itself, evidence of bad acts or negative character and indeed may be relevant, as here, to show that the defendant had the opportunity to molest the child while the mother was absent. In any event, no objection was made to this testimony, and we conclude that it does not rise to the level of plain error. *See Wainwright*, 504 A.2d at 1100.



(6)    Washington's final claim of error is directed to the sufficiency of the evidence to support his conviction of Unlawful Sexual Contact Second Degree as a lesser included offense of one of the charges of Unlawful Sexual Intercourse First Degree.  Because Washington concedes that he did not present an insufficiency of the evidence claim at trial, he is precluded from asserting that claim on appeal in the absence of plain error.  In view of the State's evidence presented at trial, both direct and circumstantial, coupled with the defendant's denial, his conduct was a jury question posing issues of credibility.  Accordingly, the claim is not subject to plain error review and must be rejected.

(7)    Our rejection of appellant's plain error claims in this direct appeal does not preclude the later assertion of an ineffective assistance of counsel claim under Superior Court Criminal Rule 61.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is,

AFFIRMED.

BY THE COURT:

_____
Justice

5

A-7

IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN L. WASHINGTON,           :
     Defendant-Below,        :
     Appellant,              :
                      :
     v.                      :    No. 421, 1998
                      :
STATE OF DELAWARE,             :
     Plaintiff-Below,        :
     Appellee.               :

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

APPELLANT'S OPENING SUPPLEMENTAL MEMORANDUM

     Following the submission of a Rule 26(c) Brief by Mr. Washington's trial counsel and a Motion to Affirm by the State, this Court appointed current counsel to prosecute the appeal. In an Opening Brief dated September 28, 1999 Appellant raised three (3) issues on appeal.

     The first two issues dealt with the admissibility of evidence considered by the Appellant to be improperly placed before the jury, including evidence of an abusive relationship between Mr. Washington and his wife, the mother of the alleged victim. The third issue dealt with an insufficiency of the evidence claim as directed to a conviction of Unlawful Sexual Contact Second Degree.

     Prior to the State filing its Answering Brief, this Court issued its decision in <u>Kenton v. State</u>, Del. Supr., No. 456, 1998, Veasey, C.J. (October 20, 1999) (ORDER), a copy of which was attached to the State's October 22, 1999 Answering Brief (Exhibit A to Appellee's Brief).

This Court subsequently directed counsel to file supplemental memoranda as to the effect of the Kenton decision upon this case. This is Appellant's Opening Supplemental Memorandum.

Appellant asserts that as in Kenton, the trial court erred in permitting the jury to hear evidence of an abusive relationship between Kevin Washington and Cynthia Washington. The sole distinction in Appellant's view is that that was no objection made by Mr. Washington's counsel.

The problems in this case began when Cynthia Washington stated on direct examination by the Deputy Attorney General that on the date when her daughter first brought the allegations of sexual abuse to her attention (February 27, 1995) Appellant was in jail. (A-14).

On cross-examination in response to an inquiry as to whether Mr. Washington would show up and visit Cynthia Washington when he was supposed to be living with his sister, she replied that "he broke the window and came in." (A-17).

It was on re-direct where she then testified to being physically abused, punched, slapped, and tied up. She testified that Mr. Washington had pled guilty to criminal charges in Family Court in connection with those events.

She was also asked and ageed that Appellant had been convicted of Assault Third Degree, Harassment, and violating no contact orders in which she was the victim. She also indicated that Appellant has a drug problem from 1989 through the date of these offenses. (A-18-19).

2.

Appellant notes that a review of the transcript indicates that unlike the timely volunteering which occurred during cross-examination, the responses on re-direct were largely to either leading or improper questions by the State.

Because no proffer was made as to any of this evidence and it came into evidence without objection by the defense, it is difficult to ascertain what purpose it had in the trial. However, the trial court made no attempt to intervene sua sponte. Nor did the trial court act to perform any of the requisite analysis mandated by Getz v. State, Del. Supr., 538 A.2d 726 (1988).

Similar to the comment made in Kenton, the evidence proffered both on direct and re-direct, as well as arguably the volunteered response on cross-examination, had limited, if any, relevance to a material issue in dispute.

Moreover, the issues which underlie any such testimony can hardly be said to be in dispute. As Appellant set forth in his Opening Brief (pp. 7-10), the permitted evidence constituted a contravention of D.R.E. 404(b) and 609.

Like Kenton much of the evidence against Mr. Washington was circumstantial. Dr. DeJong testified that there were no specific phsyical abnormalities which would be specific for sexual abuse of the alleged victim. (A-21).

While the Kenton analysis was performed under an abuse of discretion standard and this case is couched in terms of plain error, Appellant asserts that they are no different. In Kenton the trial court actively permitted the evidence to be placed before the jury while the information was passively permitted by the trial

3

A-10

court in Appellant's trial.

In truth there is no difference. Based upon the phrasing of the re-direct examination by the Deputy Attorney General, and the prior answers by Ms. Washington, the trial court should have affirmatively acted.

Appellant asserts that upon review by this Court the conclusion of <u>Kenton</u> is not stretched to the extreme of credulity in making the holding directly applicable to this matter. Rather, reversal here is a clear and logical extension of the Order in <u>Kenton</u>. The evdience should never have come before the jury, and the Appellant was unfairly prejudiced as a result.

Accordingly, Appellant re-asserts the position set forth in his Opening Brief and prays that this Honorable Court will vacate Appellant's convictions and remand the matter to Superior Court for a new trial on Counts I, II and IV and the entry of a judgment of acquittal as to Count III.

JOSEPH A. GABAY, ESQUIRE
Bar Number 2139
901 Market Street
4th Floor
P.O. Box 590
Wilmington, DE 19899
(302) 655-6434
Counsel for Appellant

Dated: December 22, 1999

IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN L. WASHINGTON,              :
        Defendant-Below,          :
        Appellant,                :
                                  :
        v.                        :    No.  421, 1998
                                  :
STATE OF DELAWARE,                :
        Plaintiff-Below,          :
        Appellee.                 :


NOTICE OF SERVICE


        I, Joseph A. Gabay, Esquire, do hereby certify that
I have served upon Deputy Attorney General John Williams two
(2) copies of Appellant's Opening Supplemental Memorandum by
placing said copies in the U.S. Mail, directed to the
following address:

        John Williams
        Deputy Attorney General
        Sykes Building
        45 The Green
        Dover, DE 19901


        They were deposited into the U.S. Mail on December
22, 1999.

                              _____
                              JOSEPH A. GABAY, ESQUIRE
                              Bar Number 2135
                              901 Market Street
                              4th Floor
                              P.O. Box 590
                              Wilmington, DE 19899
                              (302) 655-6434
                              Attorney for Appellant

A-12

IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEVIN L. WASHINGTON,         *
                            *
    Defendant Below-     *
    Appellant,           *
                            *
    v.                  *   No. 421, 1998
                            *
STATE OF DELAWARE,       *
                            *
    Plaintiff Below-     *
    Appellee.          *

## STATE'S ANSWERING SUPPLEMENTAL MEMORANDUM

This Court's October 20, 1999 decision in <u>Kenton v. State</u>, Del. Supr., No. 456, 1998, Veasey, C. J. (October 20, 1999) (ORDER) at 2 (Exhibit A) is not relevant or dispositive of the prior crimes evidence issue in this case because <u>Kenton</u> is legally and factually distinguishable. First, in <u>Kenton</u>, the domestic abuse evidence involving the mother Wendy Legates was a subject of pre-trial defense objection. <u>Kenton</u>, *supra* at 1 (Exhibit A). In contrast, the marital abuse evidence challenged on appeal for the first time by Kevin L. Washington must be reviewed under the plain error standard because the issue was otherwise waived by the failure of defense counsel to raise any objection to such evidence in Washington's Superior Court trial. (A-18-19).

In addition to the differing appellate standard of review

1

A-13

(abuse of discretion versus plain error), the timing of the
presentation of the prior bad acts evidence is different in Kenton
and Kevin Washington's cases. That is, in Kenton the prior domestic
abuse evidence was presented during the prosecution's direct
examination of Wendy Legates and the Harrington police officers as
part of the State's case-in-chief. In contrast, Washington's prior
bad acts evidence was only presented during re-direct examination of
a single prosecution witness, Cynthia Washington, the defendant's
former wife, and was proper rebuttal evidence to the defense
suggestion during cross-examination of Cynthia that the current
child sexual molestation allegations involving Cynthia's 8 year old
daughter Tierra L. Battles were manufactured because Cynthia wanted
to get rid of Kevin Washington. (B-4). When prior bad acts or
prior crimes evidence is admitted in rebuttal or in response to a
defense initiated attack, the admission of such evidence under
D.R.E. 404(b) and this Court's guidelines in Getz v. State, Del.
Supr., 538 A.2d 726, 734 (1988); and Deshields v. State, Del. Supr.,
706 A.2d 502, 506-07 (1998) is less problematic. See generally
Kornbluth v. State, Del. Supr., 580 A.2d 556, 558 (1990); State v.
Flagg, Del. Super., 739 A.2d 799, 800-02 (1999).

    The context and timing of the admission of the prior crimes
evidence in Kenton and in Kevin Washington's case are critically
different. In opening statement before any witness testimony,
defense counsel for Kevin Washington told the jury that the child

2

A-14

sexual molestation allegations against his client were manufactured by the mother of the child complaining witness "to get rid of Mr. Washington."[1]  (A-6).

While evidence to disprove a defense is usually offered as rebuttal evidence, it can be presented during the State's case-in-chief if it has logical relevance.  Deshields, 706 A.2d at 507.  *See also* Steedley v. State, Del. Supr., No. 377, 1991, Walsh, J. (September 21, 1992) (ORDER) at 2 (Exhibit B).  Once Washington's defense attorney asserted that Cynthia Washington had manufactured false charges against Kevin Washington in both opening statement and during the cross-examination of the defendant's ex-wife, it was then permissible for the State to show the true motivation for Cynthia Washington in reporting the accused to his probation officer and in urging a Superior Court judge to keep Kevin Washington incarcerated and that this motivation was more than simple annoyance with a former spouse.  In fact, the State wished to introduce evidence through Cynthia Washington on re-direct examination that Kevin Washington had been physically abusive to his wife during the marriage and this was the reason for Cynthia Washington's actions in contacting both probation authorities and the Superior Court.  While this could have been done by recalling Cynthia Washington as a State

---

[1]See discussion of context of evidence at pp. 9-11 of the State's October 22, 1999 Answering Brief filed in connection with this appeal.

A-15

rebuttal witness after the defense case, there is no compelling reason, especially in the interests of judicial economy and in not presenting a disjointed explanation to a jury, that the full background could not be revealed on re-direct examination once the defense raised the matter on cross-examination of the witness.

While the Kenton decision is factually distinguishable from the case at bar, Kenton's holding must be read in conjunction with this Court's prior decisions in Smith v. State, Del. Supr., 669 A.2d 1, 5 (1995); and Lloyd v. State, Del. Supr., No. 259, 1990, Walsh, J. (November 6, 1991) (ORDER) at 2 (Exhibit C). Any expansive reading of Kenton's prohibition against the admission of prior bad acts evidence under D.R.E. 404(b) is inherently limited by the earlier decisions in both Smith and Lloyd since neither decision was expressly overruled or even distinguished in Kenton. In fact, although the timing of the admission of the prior crimes evidence is different, many of the factual circumstances in Lloyd are similar to the Kenton situation.

4

A-16

For these reasons, the recent decision in Aldon Kenton's case is not dispositive of the prior crimes or prior bad acts evidence issue in this appeal.

John Williams
Deputy Attorney General
Delaware Bar ID. No. 365

Delaware Department of Justice
45 The Green
Dover, Delaware 19901
(302) 739-4211 (ext. 263)

DATE:   January 3, 2000

5

A-17

---A.2d----
**Unpublished Disposition**

**(Cite as: 1999 WL 1090570 (Del.Supr.))**

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW
REPORTS. UNTIL RELEASED, IT IS SUBJECT TO
REVISION OR WITHDRAWAL.

NOTE: THIS OPINION WILL NOT BE
PUBLISHED IN A PRINTED VOLUME. THE
DISPOSITION WILL APPEAR IN A REPORTER
TABLE.

**Aldon KENTON, Defendant Below, Appellant,**
v.
**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 456, 1998.**

Supreme Court of Delaware.

Submitted Sept. 8, 1999.

Decided Oct. 20, 1999.

Court Below--Superior Court of the State of Delaware
in and for Kent County, Cr. A. Nos. IK98010168
IK98010169.

Before VEASEY, Chief Justice, HOLLAND and
BERGER, Justices.

ORDER

*1 This 20th day of October, 1999, upon consideration
of the briefs of the parties and their contentions in oral
argument, it appears to this Court that:

(1) Aldon Kenton ("Kenton") appeals from his
conviction, following a jury trial in the Superior Court,
of first degree assault and endangering the welfare of a
child. He argues that the Superior Court committed
reversible error by: (i) admitting evidence of Kenton's
prior acts of domestic abuse under D.R.E. 404(b); (ii)
admitting marijuana use evidence in violation of D.R.E.
404(b); and (iii) excluding the admission of good
character evidence on behalf of Kenton pursuant to
D.R.E. 405.

(2) On June 23, 1996, Joshua Kenton ("Joshua") was
born to Aldon Kenton and Wendy Legates ("Legates").
Kenton and Legates, although not married, lived
together in Harrington, Delaware. On August 22, 1996,
Legates went shopping and left Joshua and her two

daughters with Kenton in her Harrington apartment.
When Legates left, Joshua was awake. But, upon
returning in the mid-afternoon, she found Joshua
unresponsive and Kenton passed out on the bed with
Joshua. Legates then took Joshua to the hospital where
doctors found that Joshua sustained broken bones in his
legs, a fractured skull, and permanent brain damage
resulting from trauma inflicted by an adult. On August
23, 1996 and September 2, 1996, Legates initially told
police that she did not know how Joshua's injuries
occurred. On September 11, 1996, Legates recanted
her story telling police that Kenton abused the child and
threatened to kill her if she told. Kenton was indicted
on January 6, 1997.

(3) Before opening statements at trial, the State moved
to introduce prior bad act evidence of domestic abuse
incidents between Kenton and Legates. The State's
proffered domestic abuse evidence included incidents
prior to Joshua's injuries beginning as early as October
11, 1995. The State contends that the domestic abuse
evidence was admissible under D.R.E. 404(b) to
explain Legates' motive for deceiving police.
Furthermore, the State argues that the evidence was
necessary for the jury to make a determination of
Legates' credibility. Defense counsel objected to the
admission of the domestic abuse evidence. The
Superior Court first made a partial ruling requiring that
leave of court be obtained before evidence of prior
domestic abuse is presented to the jury. After opening
statements, the court made another ruling that admitted
the evidence of Kenton's prior domestic abuse. At the
conclusion of the trial, the court gave a limiting
instruction to the jury regarding the evidence.

(4) Kenton argues that the prior acts of domestic abuse
were inadmissible under D.R.E. 404(b). He asserts that
Legates' motive for deceiving police is not a material or
ultimate fact in dispute. Moreover, Kenton contends
that such evidence is highly prejudicial propensity
evidence and contrary to the standard of admissibility
for 404(b) evidence established by this Court in Getz v.
State, Del.Supr., 538 A.2d 726 (1988).

*2 (5) This Court reviews the Superior Court's
decision to admit 404(b) evidence for an abuse of
discretion. See Floudiotis v. State, Del.Supr., 726 A.2d
1196, 1202 (1999). In Getz, we established factors that
must be considered by the trial court when determining
the admissibility of prior bad acts evidence: (i) the
evidence must be material to an issue or ultimate fact in
dispute; (ii) the evidence must be offered for a purpose

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

permitted under D.R.E. 404(b); (iii) the evidence must be plain, clear, and conclusive; (iv) the prior acts must not be too remote in time; (v) the probative value of the evidence must outweigh its prejudicial effect, as required by D.R.E. 403; and (vi) the court must instruct the jury regarding the evidence's limited purpose. See Getz, 538 A.2d at 734.

(6) The State's proffered domestic abuse evidence has limited, if any, relevance to a material issue in dispute. Moreover, the evidence suggests to the jury that Kenton has a general predisposition toward violence against members of his family. Even if the State were to assert that Legates' motives for recanting were material to an ultimate fact in dispute, the balancing requirement of D.R.E. 403 demands the exclusion of Kenton's prior acts of domestic abuse. The State's proffered purpose for prior domestic abuse evidence is too tenuous to offset the prejudicial nature of the evidence.

(7) In this case, the State sought, and was granted, permission to present evidence of Kenton's prior acts of domestic abuse, against a person other than the subject of the charge. Although the trial court conducted the

Getz analysis and found the domestic abuse evidence relevant, the ruling here constitutes an abuse of discretion and is inconsistent with this Court's ruling in Aiken v.. State, Del.Supr., No. 244, 1993, Walsh, J. (June 29, 1994) (ORDER).

(8) We conclude that the trial court abused its discretion by admitting evidence of prior misconduct involving Kenton and Legates. In light of the State's circumstantial evidence and the prejudicial nature of the domestic abuse evidence, the erroneous admission cannot be deemed harmless beyond a reasonable doubt. Accordingly, a new trial is warranted. Our reversal of Kenton's conviction for the trial judge's abuse of discretion in admitting 404(b) evidence of Kenton's domestic violence renders a ruling on his other two claims unnecessary.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is, REVERSED and the matter REMANDED for a new trial consistent with this order.

END OF DOCUMENT

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

615 A.2d 532 (Table)
**Unpublished Disposition**

**(Cite as: 615 A.2d 532, 1992 WL 276404 (Del.Supr.))**

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

**Russell STEEDLEY, Defendant Below, Appellant,**
v.
**STATE of Delaware, Plaintiff Below, Appellee.**

No. 377, 1991.

Supreme Court of Delaware.

Submitted: Aug. 18, 1992.

Decided Sept. 21, 1992.

Court Below:  Superior Court of the State of Delaware, in and for Kent County, Cr.A. Nos. IK90-06-0183 through 0186.

Superior Court, Kent County

AFFIRMED.

Before VEASEY, Chief Justice, and HORSEY and WALSH, Justices.

ORDER

WALSH, Justice.

**\*\*1** This 21st day of September, 1992, upon consideration of the briefs of the parties, it appears to the Court that:

(1) The appellant, Russell Steedley ("Steedley"), appeals his Superior Court conviction of First Degree Murder. He raises a single claim of error: that the trial court abused its discretion in admitting evidence of two prior assaultive incidents between Steedley and the victim.

(2) On the morning of June 10, 1990, Steedley fatally stabbed his estranged wife, Ann Steedley, shortly after confronting her in the apartment of Raymond Nivens ("Nivens") with whom she had become romantically involved. Steedley also stabbed Nivens several times. At trial Steedley admitted killing his wife and stabbing Nivens but claimed he did so under extreme emotional distress induced by final confirmation of his suspicions of an affair between his wife and best friend. Steedley

was convicted of the First Degree Murder of his wife, the Attempted Murder of Nivens, and two counts of Possession of a Deadly Weapon During the Commission of a Felony. In this appeal, he challenges only the conviction for First Degree Murder.

(3) As part of its case-in-chief, the State offered evidence of two incidents which occurred within a few months of the killing. The first incident took place on April 30, 1990, while Mrs. Steedley, in an attempt at marital reconciliation, spent the night with her estranged husband at his apartment. Around 3:00 a.m. Steedley asked his wife if she would like some grits. While he was preparing the grits she was lying on the couch in the living room. Without warning, Steedley emerged from the kitchen, told his wife that "I thought just shooting you would be enough, but I can see that isn't enough for you," grabbed her hair and unsuccessfully attempted to pour the boiling grits over her head. He then threatened her with a knife, inflicting a wound to her left hand. He next told her to write down all of the names of the men with whom she had affairs during his recent military tour in Panama. Steedley, who at this point was threatening Mrs. Steedley with a knife and handgun, then forced his wife into his car and began driving towards Nivens' apartment, intending to confront Nivens about his relationship with his wife.   Apparently, Steedley calmed down shortly and returned home before reaching Nivens' apartment.

In another incident, prior to the events described above, Steedley told his wife he had been looking for her while armed with a loaded handgun and if he had found her he would have killed her.

(4) Prior to trial, Steedley filed a Motion in Limine to exclude the prior incidents as inadmissible evidence of bad character. The trial court applied the standards announced in Getz v. State, Del.Supr., 538 A.2d 726, 734 (1988) and concluded the evidence was admissible as proof of motive, intent, or plan, and also to demonstrate the absence of extreme emotional distress under D.R.E. 404(b). We agree with the Superior Court's rationale and ruling.

**\*\*2 (5)** The first Getz guideline allows admission of evidence which is material to an issue or ultimate fact in dispute in the case. Id. Steedley does not dispute that the evidence offered by the State is material to whether he possessed an intent to kill. Instead, he claims that intent was not an issue or ultimate fact in

615 A.2d 532 (Table)
**(Cite as: 615 A.2d 532, 1992 WL 276404, \*\*2 (Del.Supr.))**

dispute because by raising the defense of extreme emotional distress the defense conceded that the defendant intentionally killed his wife. This argument misses the mark. Intent to kill is a prima facie element of First Degree Murder and the State has an obligation to prove its case. 11 Del.C. § 301. The State cannot defer proof of elements of the charged crime, in its case-in-chief, simply because the defendant had indicated he intends to concede certain elements of the offense. The evidence offered here was material to an issue or ultimate fact in dispute--whether Steedley intended to kill his wife.

(6) The second Getz guideline allows admission of evidence which is introduced for a purpose specifically sanctioned by Rule 404(b). Getz, 538 A.2d at 734. Admitting evidence of prior bad acts to prove motive or plan is specifically sanctioned by Rule 404(b). The only question is whether the court abused its discretion in ruling that the proffered evidence was probative of motive or plan. Steedley's violent accusations of infidelity with a specific mention of Nivens are probative of the presence of a motive to kill because of prior knowledge of the affair between Nivens and his wife. Similarly, Steedley's previous use of a knife and his abortive trip to confront Nivens are probative of the presence of a plan. Both incidents provided material evidence of motive and plan.

(7) The second Getz guideline also allows admission of evidence which is introduced for a purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. Id. Although proving the absence of extreme emotional distress is not a listed purpose sanctioned by Rule 404(b), this Court has ruled that the listed exceptions are "deemed illustrative, not exclusive." Id. at 730. There is a striking similarity between offering evidence for the purpose of proving the absence of extreme emotional distress and offering it for the sanctioned purpose of proving absence of mistake or accident. In addition,

offering evidence for such a purpose is not inconsistent with the prohibition against evidence of bad character. Evidence offered to disprove a defense is usually submitted as rebuttal evidence. However, it is not unusual for the State's evidence to be admissible for more than one purpose. Casalvera v. State, Del.Supr., 410 A.2d 1369, 1372 (1980). When the same evidence is properly admissible in both the State's case-in-chief and its rebuttal the defense cannot dispute its introduction in the case-in-chief. Thus, admitting the evidence for the purpose of proving absence of extreme emotional distress, even though the evidence was offered in the State's case-in-chief, was not an abuse of discretion.

\*\*3 (8) Finally, the fifth Getz guideline allows admission of prior bad acts evidence only if its probative value outweighs its unfairly prejudicial effect. Getz, 538 A.2d at 734. [FN1] Determining whether the probative value of a particular piece of evidence is outweighed by the danger of unfair prejudice is a matter which falls particularly within the discretion of the trial judge who has the first-hand opportunity to evaluate the relevant factors. Williams v. State, Del.Supr., 494 A.2d 1237, 1241 (1985). The trial judge listened to the arguments of counsel, considered the relevance of the evidence against the possibility of unfair prejudice to the defendant, and gave a proper limiting instruction. Accordingly, he exercised his discretion in a sound and principled manner.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is,

Affirmed.

> FN1. Steedley does not challenge the trial court's application of the third, fourth or sixth Getz guidelines.

END OF DOCUMENT

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

604 A.2d 418 (Table)
Unpublished Disposition

Page 7

(Cite as: 604 A.2d 418, 1991 WL 247737 (Del.Supr.))

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Franklin LLOYD, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.

No. 239,1990.

Supreme Court of Delaware.

Submitted: Oct. 29, 1991.

Decided: Nov. 6, 1991.

Superior Court, New Castle County

AFFIRMED.

Before MOORE, WALSH and HOLLAND, Justices.

ORDER

WALSH, Justice.

**1 This 6th day of November, 1991, it appears to the Court that:

(1) The defendant, Franklin Lloyd ("Lloyd") was convicted after a jury trial in Superior Court in May, 1989 of two counts of Unlawful Sexual Intercourse. He was sentenced to consecutive terms of imprisonment. In this appeal, Lloyd raises a single claim of error that the Trial Judge improperly permitted the State to introduce evidence of other acts of sexual misconduct on his part.

(2) This case arises from allegations by Lloyd's twenty-three year old stepdaughter that he forcibly engaged in sexual intercourse with her on December 11, 1987. Lloyd's defense at trial was that his stepdaughter's allegations were false and were motivated by animus toward him. This animus supposedly arose due to, inter alia, Lloyd's relationship with her mother, his refusal to aid her boyfriend in certain legal troubles, and his ejection of her and her boyfriend from Lloyd's home.

(3) At trial, Lloyd attempted to prove this animus by cross-examination of the stepdaughter concerning each of these bases for bias. Before redirect, and

while the jury was out of the courtroom, the State informed the court that it intended to rebut this evidence with testimony on redirect that the real reason for the stepdaughter's bias toward Lloyd was prior acts of sexual abuse committed by Lloyd against her during the previous ten years.

Lloyd objected immediately. He argued that admission of such evidence was prohibited since it did not fall within the exceptions set forth in Delaware Rule of Evidence 404(b). [FN1] The State argued that Lloyd had "opened the door" to such evidence by suggesting evidence of bias of the complaining witness and the State should be permitted to question the witness to disclose the actual ground for the bias.

In overruling the objection, the trial court reasoned that D.R.E. 404(b) contained an extensive but not exclusive list of exceptions to the prohibition of prior bad acts evidence and that it would be unfair not to allow the witness to explain the reasons for her bias. It did, however, at the appropriate time, instruct the jury in the following manner:

Basically, the evidence that you just heard offered by the State was to indicate certain prior bad acts of the accused toward the witness. That evidence is being offered and admitted into the court for one purpose, the sole and exclusive purpose of explaining any bad feelings or bias that the witness has towards the accused.

The evidence may be considered by you for only that one purpose and for no other purpose whatsoever. You may not consider that evidence as any proof that the accused acted in conformity with the alleged prior bad acts. You may not consider it as any proof of the guilt of the accused.

You may only consider it for the witness' alleged bias toward the accused.

(4) Our standard of review in a case where a criminal defendant claims the Superior Court erred by admitting certain evidence is abuse of discretion. Getz v. State, Del.Supr., 538 A.2d 726 (1988). We, therefore, will not disturb the lower court's ruling if it is based on conscience and reason, as opposed to being arbitrary and capricious. Pitts v. White, Del.Supr., 109 A.2d 786 (1954).

**2 (5) In Getz v. State, Del.Supr., 538 A.2d 726

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

Exhibit C

A-22

(1988), we addressed the scope of D.R.E. 404(b). There, we clearly held that the proper approach to interpreting the rule is an inclusionary one, i.e., the list of exceptions found in the second sentence of the rule is not exhaustive of situations permitting the use of prior bad acts. A party is therefore "allowed to offer evidence of uncharged misconduct for any material purpose other than to show a mere propensity or disposition on the part of the defendant to commit the charged crime." 538 A.2d at 730.

In order to aid trial courts in the determination of when misconduct evidence is admissible, we set out guidelines in Getz to govern that inquiry. Those guidelines were as follows:

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue.

(2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition.

(3) The other crimes must be proved by evidence which is 'plain, clear and conclusive.' Renzi v. State, Del.Supr., 320 A.2d 711, 712 (1974).

(4) The other crimes must not be too remote in time from the charged offense.

(5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403.

(6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.

538 A.2d at 734.

It is true that, in the Superior Court's bench ruling in this case, the court failed to address explicitly each of these guidelines. However, we find that admission of the evidence here was not an abuse of discretion because the guidelines were clearly satisfied.

(6) The first inquiry under the guidelines is whether the evidence is material to an issue or ultimate fact in dispute in the case. Lloyd argues that the misconduct

evidence at issue here was not material because it did not tend to show the witness was telling the truth. In other words, Lloyd argues that because the misconduct evidence was merely more evidence of bias and not evidence tending to rebut the defense notion of bias, it was not material to the issue of whether the complaining witness was telling the truth.

We disagree. Evidence is material if it tends, of itself or in connection with other evidence, to influence the result reached by the jury. Berndston v. Armino, Conn.Supr., 411 A.2d 36 (1979). If the jury believed the stepdaughter's testimony regarding prior incidents with Lloyd, the picture the defense was trying to present, that of a spiteful, lying young woman, would be dispelled. Therefore, this evidence directly rebutted evidence presented by the defense tending to show why the stepdaughter should not be believed. In that light, it was clearly material to the central issue in the case--whether the complaining witness was telling the truth.

**3 That the evidence cut both ways is irrelevant as to materiality. The defense was entitled to argue to the jury its interpretation of the evidence and the jury was entitled to agree or not. However, the evidence would be material in either event.

The second inquiry is whether the evidence was admitted for a proper purpose. Here, that purpose was to rebut Lloyd's evidence of bias. Bias of the complaining witness was, essentially, Lloyd's entire case. We believe it was entirely proper, in rebuttal, for the State to attack the notion underlying Lloyd's entire case.

The third inquiry is whether the prior acts were approved by plain, clear and conclusive evidence. Here, the only evidence presented regarding Lloyd's prior misconduct was the stepdaughter's testimony. However, we have held that the testimony of a sexual assault victim, standing alone, is enough to support an element of the crime of rape. Styler v. State, Del.Supr., 417 A.2d 948 (1980). It would be odd indeed to hold that such testimony is sufficient to support a criminal conviction yet insufficient to show reliability under the "plain, clear and conclusive" standard of Getz. If such evidence may be considered proof beyond a reasonable doubt, it certainly may be considered "plain, clear, and conclusive."

The fourth inquiry is whether the acts of prior misconduct are too remote in time from the charged offense. Here, the misconduct occurred ten years

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works