SUPERIOR COURT CRIMINAL DOCKET                    Page    6
( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON                   DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.          AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.              KEVIN WASHINGTON

```
       Event
No.    Date         Event                              Judge
----------------------------------------------------------------------------
       PLEAS FILE A COPY OF JUDGE COOCH'S  091898 SENTENCING ORDER
       TO BE ATTACHED TO THE NOTIC OF APPEAL UPON YOUR REQUEST.
61     09/25/1998
       LETTER FROM (SUPREME COURT) TO COURT REPORTER
       PURSUANT TO SUPREME COURT RULE 9(E)(IV), THE
       TRANSCRIPT MUST BE FILED WITH THE PROTHONOTARY
       NO LATER THAN 110498.
62     09/28/1998
       MOTION FOR MODIFICATION OF SENTENCE FILED.
       RETURNED TO DEFT. - NOT SERVED ON A.G.
64     11/06/1998
       LETTER FROM (SUPREME COURT) TO COURT REPORTER
       THE COURT HAS DIRECTED ME TO INFORM YOU THAT YOUR
       REQUEST IS GRANTED. THE TRANSCRIPT MUST BE FILED NO
       LATER THAN 120498.
65     11/17/1998
       DEFENDANT'S LETTER FILED.
       RE: ATTORNEY J. DALLAS WINSLOW TO ENTER AN APPEAL ON DEFENDANT'S
       BEHALF
66     11/25/1998                                COOCH RICHARD R.
       TRANSCRIPT OF SENTENCING FILED.
       SEPT. 18, 1998
67     12/09/1998
       LETTER FROM (SUPREME COURT) TO COURT REPORTER
       THE COURT HAS DIRECTED ME TO INFORM YOU THAT YOUR
       REQUEST IS GRANTED. THE TRANSCRIPT MUST BE FILED
       NO LATER THAN 010499,
71     12/15/1998
       DEFENDANT'S LETTER FILED.
68     01/04/1999                                COOCH RICHARD R.
       TRANSCRIPT OF TRIAL FILED.
       APR. 29, 30, 1998
69     01/04/1999                                COOCH RICHARD R.
       TRANSCRIPT OF TRIAL FILED.
       APRIL 28, 1998
70     01/11/1999
       RECORDS SENT TO SUPREME COURT.
72     01/11/1999
       LETTER FROM (SUPREME COURT) TO PROTHONOTARY PURSUANT
       TO SUPREME COURT RULE 9(B)(I), THE RECORD AND TRANSCRIPT
       MUST BE FILED WITH THIS OFFICE NO LATER THAN 011499.
73     01/15/1999
```

RECEIVED

DEC  5 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



SUPERIOR COURT CRIMINAL DOCKET                Page    7
( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON                    DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.        AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.            KEVIN WASHINGTON

```
      Event
No.   Date           Event                              Judge
------------------------------------------------------------------------
      RECEIPT OF RECORDS ACKNOWLEDGED BY
      SUPREME COURT
74    02/04/1999
      DEFENDANT'S LETTER FILED. (COPY OF LETTER DEFENDANT SENT TO
      DALLAS WINSLOW).
76    03/12/1999
      DEFENDANT'S MOTION FILED (RE: INEFFECTIVE COUNSEL)
      RE: COPY OF DEFENDANTS' MOTION TO J DALLAS WINSLOW
75    03/31/1999
      RECORDS SENT TO SUPREME COURT.
      (TRANSCRIPT)
77    05/07/1999
      CONFLICT LETTER FILED BY GAYLE LAFFERTY
78    05/12/1999                              BARRON NORMAN A.
      ORDER: APPOINTMENT OF COUNSEL; JOSEPH A. GABAY, ESQ.        APPOINTED
      TO REPRESENT DEFENDANT.
79    07/20/1999
      MOTION FOR POSTCONVICTION RELIEF FILED.
      PRO SE REFERRED TO JUDE COOCH
      REFERRED ON 7/26/99.
80    07/26/1999
      LETTER FROM ANGELA HAIRSTON  TO M.JANE BRADY
      RE: NOTIFICATION OF FILING OF A PRO SE MOTION FOR POSTCONVICTION
      RELIEF. TO BE ASSIGNED TO A DAG.
81    08/20/1999                              COOCH RICHARD R.
      MOTION FOR POSTCONVICTION RELIEF DENIED.
      THE COURT IS IN RECEIPT OF YOUR MOTION FOR POSTCONVITION RELIEF FILED
      WITH THE PROTHONOTARY ON JULY 20, 19993 ON PAGE 2 OF YOUR MOTION, YOU
      STATE THAT YOU DID APPEAL THIS CASE TO THE SUPREME COURT AND THAT THE
      SUPREME COURT'S FINAL ORDER OR JUDGEMENT WAS APRIL 7, 1999. BY SUPREME
      COURT ORDER DATED MAY 6, 1999, THAT COURT ORDERED THAT JOSEPH GABAY,
      ESQ BE APPOINTED AS SUBSTITUTE COUNSEL AND THAT HE FILE AN OPENING
      BRIEF IN SUPPORT OF YOUR APPEAL WITHIN 30 DAYS OF THAT ORDER. UPON
      VERIFICATION WITH THE SUPREME COURT, I WAS ADVISED THAT MR GABAY'S
      OPENING BRIEF IS DUE TO BE FILED ON AUGUST 26, 1999 AND THAT THE
      APPEAL IS CURRENTLY PENDING BEFOPRE THE SUPREME COURT. ACCORDINGLY,
      BECAUSE THE SUPERIOR COURT DOES NOT HAVE JURISDICTION OVER THIS CASE
      BECAUSE IT IS ON APPEAL BEFORE THE SUPREME COURT, YOUR MOTION FOR
      POSTCONVICTION RELIEF IS HEREBY DENIED.
      IT IS SO ORDERED.
82    08/31/1999
      DEFENDANT'S LETTER FILED.
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    8
                       ( as of  02/08/2005 )
```

State of Delaware v.  KEVIN L WASHINGTON                      DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.         AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.             KEVIN WASHINGTON

```
      Event
No.   Date           Event                             Judge
----------------------------------------------------------------------------
      ASKING THE HELP OF HIS ATTORNEY FOR GETTING A COPY OF AN OPENING BRIEF
      OF THE CASE ON APPEAL.
83    03/24/2000
      RECEIPT OF RECORD AND MANDATE RETURNED FROM SUPREME COURT ON THE ABOVE
      APPEAL.  (CASE CLOSED) #421, 1999
84    03/24/2000
      MANDATE FILED FROM SUPREME COURT - AFFIRMED.
        OUR REJECTION OF APPELLANT'S PLAIN ERROR CLAIMS IN THIS APPEAL DOES
      NOT PRECLUDE THE LATER ASSERTION OF AN INEFFECTIVE ASSISTANCE OF
      COUNSEL CLAIM UNDER SUPERIOR COURT CRIMINAL RULE 61.
      NOW, THEREFORE, IT IS ORDERED THAT THE JUDGEMENT OF THE SUPERIOR COURT
      BE, AND THE SAME HEREBY IS, AFFIRMED.
85    09/05/2000
      MOTION TO ACCESS THE EVIDENCE FOR PURPOSES OF DNA TESTING FILED.
      PRO SE - REFERRED TO JUDGE COOCH.
86    10/13/2000
      STATE'S RESPONSE FILED.
      MOTION FOR ACCESS TO EVIDENCE FOR DNA TESTING.
      PAUL WALLACE, DAG.
      REFERRED TO JUDGE COOCH.
87    11/15/2000                                 COOCH RICHARD R.
      ORDER: MOTION TO ACCESS THE EVIDENCE FOR PURPOSES OF DNA TEST - DENIED
        SEE ORDER FOR VARIOUS REASONS.
88    09/17/2001
      MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
      REFERRED TO JUDGE COOCH.
89    09/17/2001
      LETTER FROM ANGELA HAIRSTON, PROTHONOTARY  TO STEVEN WOOD, DAG
      RE: NOTICE OF PRO SE FILING OF MOTION FOR POSTCONVICTION RELIEF.
      ORIGINAL DEPUTY ATTORNEY GENERAL NO LONGER WITH THE DEPT. OF JUSTICE.
90    10/18/2001                                 COOCH RICHARD R.
      ORDER:  THIS 17TH DAY OF OCTOBER, 2001, THE DEFENDANT HAVING FLED A
      PRO SE MOTION FOR POSTCONVICTION RELIEF PURSUANT TO SUPERIOR COURT
      CRIMINAL RULE 61 ON SEPTEMBER 17, 2001 AND RECEIVED IN CHAMBERS ON OR
      AFTER OCTOBER 6, 2001.
      IT IS ORDERED THAT:
      1}  DEFENDANT'S PRIOR TRIAL COUNSEL, J. DALLAS WINSLOW, JR., ESQUIRE,
      SHALL FILE AN AFFIDAVIT RESPONDING TO GOUND 1, 4, AND 5 WHICH CLAIM
      INEFFECTIVE ASSISTANCE OF COUNSEL, ON OR BEFORE NOVEMBER 30, 2001
      SERVING THE AFFIDAVIT ON THE STATE AND ON THE DEFENDANT.
      2)  THE DATE SHALL FILE A LEGAL MEMEORANDUM IN RESPONSE TO
      DEFENDANT'S MOTION, ADDRESSING ALL GOUNDS SET FORTH IN THE MOTION
```

2 c i

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page   9
                       ( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON              DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.        AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.            KEVIN WASHINGTON


        Event
No.     Date           Event                          Judge
-----------------------------------------------------------------------------
        AND TRIAL COUNSEL'S RESPONSE, ON OR BEFORE JANUARY 11, 20002,
        SERVING THE RESPONSE ON MR. WINSLOW AND DEFENDANT.
        3)  A REPLY BY MR WASHINGTON TO THE ABOVE AFFIDAVIT OF PRIOR TRIAL
        COUNSEL AND TO THE STATE'S RESPONSE SHALL BE FILED WITH THE
        PROTHONOTARY BY FEBRUARY 13, 2002.
91   11/28/2001
        MOTION FOR TRANSCRIPTS (PRO SE)  FILED.
        REFERRED TO JUDGE COOCH
92   12/11/2001                               COOCH RICHARD R.
        LETTER/ORDER ISSUED BY JUDGE: COOCH. MOTION FOR TRANSCRIPTS.
        RE:I AM IN RECEIPT OF YOUR NOVEMBER 28 2001 MOTION FOR TRANSCRIPTS IN
        THE ABOVE CAPTIONED CASE IN WHICH YOU REQUEST TRANSCRIPTS OF THE
        GRAND JURY MINUTES TO DETERMINE IF YOU WERE IN FACT INDICTED BY THE CO
        CONCURRENCE OF THE REQUISTE NUMBER OF JURORS [IN] ACCORDANCE WITH 10
        DEL.C.SEC.4505, NUMBER OF JURORS TWELVE(12). AS GROUNDS FOR THE ABOVE
        MOTION YOU ARE ARGUE THAT YOU ARE AN INDIGENT PERSON AND THAT YOU HAVE
        A CONSTITUTIONAL RIGHT TO FREE TRANSCRIPTS. THERE IS NO CONSTITUTIONAL
        RIGHT TO THE PROVISION OF A FREE TRANSCRIPT FOR THE PREPARATION OF A
        POST-TRIAL MOTION. YOUR MOTION IS DENIED BECAUSE IT FAILS TO SHOW
        EITHER THAT THERE IS SOME LEGAL OR FACTUAL BASIS FOR RELIEF AND THAT T
        THERE IS A PARTICULARIZED NEED FOR THE TRANSCRIPTS, SEE BRATCHER V
        STATE, DEL. SUPR., NO.33`, 1998 VEASEY, C.J. (NOV.10, 1998) ORDER.
        IT IS SO ORDERED.
93   12/12/2001
        AFFIDAVIT OF PRIOR COUNSEL_ J.DALLAS, WINSLOW, ESQ IN REFERENCE TO
        DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF.
95   12/12/2001
        AFFIDAVIT OF PRIOR DEFENSE COUNSEL -RE: RULE 61.
        REFERRED TO JUDGE COOCH.
94   12/14/2001                               COOCH RICHARD R.
        SCHEDULING ORDER. ( REVISED) NOW THIS 14TH DAY OF DECEMBER, 2001:
        1) DEFENDANT'S PRIOR TRIAL COUNSEL, J.DALLAS WINSLOW, JR., ESQ HAS
        FILED AN AFFIDAVIT RESPONDING TO DEFENDANT'S PRO SE MOTION FOR
        POSTCONVICTION RELIEF.
        2) THE STATE SHALL IFLE ITS RESPONSE TO DEFENDANT'S MOTION ADDRESSING
        THE FACTUAL AND LEGAL ASSIERTIONS IN THE MOTION AND THE AFFIDAVIT OF
        MR. WINSLOW SERVING THAT RESPONSE TO ALL PARTIES ON OR BEFORE JANUARY
        28, 2002.
        3) ANY REPLY BY THE MOVANT TO THE STATE'S RESPONSE AND TO THE
        AFFIDAVIT OF MR. WINSLOW SHALL BE FILED ON OR BEFORE 2/28/02.
        IT IS SO ORDERED.
97   01/25/2002
```

SUPERIOR COURT CRIMINAL DOCKET                Page   10
( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON                    DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.        AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.            KEVIN WASHINGTON

```
      Event
No.   Date        Event                                    Judge
------------------------------------------------------------------------
      MOTION TO AMEND POSTCONVICTION RELIEF (PRO SE)  FILED.
      REFERRED TO JUDGE COOCH.
96    01/28/2002
      STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF.
98    02/08/2002                                  COOCH RICHARD R.
      LETTER FROM JUDGE COOCH TO MR. VEITH AND MR. WASHINGTON DATED 02062002
      I AM IN RECEIPT OF DEFT'S "MOTION TO AMEND POSTCONVICTION RELIEF"
      FILED JAN 25. 2002. THIS MOTION TO AMEND WAS FILED 3 DAYS BEFORE THE
      FILING OF THE STATE'S RESPONSE ON 1/28/02. ALTHOUGH THE MOTION TO
      AMEND IS DEVOID OF ANY FACTS OR LEGAL AUTHORITY IN SUPPORT OF ALLOWING
      AMENDMENT TO THE PENDING POSTCONVICTION RELIEF SHALL BE FILED ON OR
      BEFORE 2/22/02. NO FURTHER EXTENSIONS WILL BE PERMITTED. A FURTHER
      RESPONSE/REPLY SCHEDULE WILL BE ORDERED BY THE COURT UPON RECEIPT AND
      REVIEW OF THAT AMENDED PETITION. IT IS SO ORDERED.
99    02/22/2002
      AMENDED MEMORANDUM OF LAW IN SUPPORT OF RULE 61.
      REFERRED TO JUDGE COOCH.
100   04/29/2002                                  COOCH RICHARD R.
      ORDER:  DEFENDANT'S PRO SE MOTION FOR POSTCONVICTION RELIEF IS DENIED.
101   06/05/2002
      LETTER FROM SUPREME COURT TO SHARON AGNEW, PROTHONOTARY
      RE: A NOTICE OF APPEAL WAS FILED IN THIS COURT ON JUNE 4, 2002.
      THE RECORD MUST BE FILED WITH THIS OFFICE NO LATER THAN JULY 19, 2002.
      315, 2002.
102   06/06/2002
      LETTER FROM SUPREME COURT TO KEVIN WASHINGTON
      RE: YOU ARE DIRECTED TO SHOW CAUSE WHY THIS APPEAL SHOULD NOT
      BE DISMISSED. FOR FAILURE TO FILE YOUR NOTICE OF APPEAL WITHIN
      30 DAYS AFTER ENTRY UPON THE DOCKET OF THE ORDER FROM WHICH THE
      APPEAL IS TAKEN AS REQUIRED BY SUPREME COURT RULE 6.
      REPOND IN WRITING TO THIS NOTICE TO SHOW CAUSE WITHIN 10 DAYS
      AFTER YOU RECEIVE IT.
103   07/11/2002
      RECEIPT FROM SUPREME COURT ACKNOWLEDGING THE RECORD.
104   07/29/2002
      MANDATE FILED FROM SUPREME COURT:  APPEAL DISMISSED.
      SUPREME COURT CASE NO: 315, 2002
      SUBMITTED: JUNE 20, 2002
      DECIDED: JULY 9, 2002
      BEFORE VEASEY, CHIEF JUSTICE, WALSH AND STEELE, JUSTICES.
105   10/09/2002
      MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
```

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page   11
                       ( as of  02/08/2005 )
```

State of Delaware v.  KEVIN L WASHINGTON                     DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.         AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.             KEVIN WASHINGTON

```
      Event
No.   Date            Event                               Judge
-------------------------------------------------------------------------------
      REFERRED TO JUDGE COOCH.
106   10/10/2002
      LETTER FROM ANGELA HAIRSTON, PROTHONOTARY OFFC  TO STEVEN WOOD, DAG
      RE: NOTICE OF FILING OF PRO SE MOTION FOR POSTCONVICTION RELIEF.
      ATTACHED COPY OF MOTION.
107   10/30/2002
      MOTION TO AMEND PENDING MEMORANDUM OF LAW FOR RULE 61 FILED. PRO SE
      REFERRED TO JUDGE COOCH.
108   11/18/2002                                    COOCH RICHARD R.
      ORDER: PRO SE MOTION FOR POSTCONVICTION RELIEF: DEFENDANT'S PRIOR
      COUNSEL SHALL FILE AN AFFIDAVIT RESPONDING THE FACTUAL ALLEGATIONS IN
      GROUNDS 1     OF THE MOTION 9ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF
      COUNSEL) ON OR BEFORE DEC.16,2002.SERVING THE AFFIDAVIT ON THE STATE
      AND ON THE MOVANT.
      2) THE STATE SHALL FILE A RESPONSE TO DEFENDANT'S MOTION ADDRESSING
      GROUND 1 OF THE MOTION, THE FACTUAL AND LEGAL ASSERTIONS IN
      DEFENDANT'S MOTION AND IN THE AFFIDAVIT OF PRIOR COUNSEL ON OR BEFORE
      JAN. 15, 2003. SERVING THE RESPONSE ON PRIOR COUNSEL AND ON THE
      MOVANT. 3) ANY REPLY BY THE MOVANT TO THE STATES RESPONSE SHALL BE
      FILED ON OR BEFORE FEB 10, 2003.
109   02/04/2003
      MOTION FOR DEFAULT OF JUDGEMENT (PRO SE) FILED.
      REFERRED TO JUDGE COOCH.
110   02/12/2003                                    COOCH RICHARD R.
      LETTER FROM JUDGE COOCH    TO J.DALLAS WINSLOW, JR. ESQ. RE: RULE 61
      PLEASE FILE THE REQUESTED AFFIDAVIT ON OR BEFORE FEB. 21, 2003.
111   02/25/2003
      DEFENDANT'S LETTER FILED. RE: PENDING AFFIDAVITS HAVE NOT BEEN
      RECEIVED IN REFERTENCE TO DEFENDANT'S MOTION FOR POSTCONVICTION.
      REFERRED TO JUDGE COOCH
112   02/28/2003
      EMAIL FILED TO: JUDGE COOCH.  FROM: DALLAS WINSLOW.
      RE: YOUR SECRETARY SENT NOTICE OF KEVIN WASHINGTON'S MATTER TO 803
      SHIPLEY STREET RATHER THAN HERE. I HAVE NOT BEEN PRACTICING AT 803
      SHIPLEY ST. UNTIL RECENTLY. I APOLOGIZ FOR NOT HAVING THE AFFADAVIT
      ACCOMPLISHED. I'M LEAVING FOR MAINE TOMORROW FOR A WEEK. I WILL TRY TO
      ACCOMPLISH AFFIDAVIT BEFORE I LEAVE OR IMMEDIATELY UPON MY RETURN.
113   03/14/2003
      DEFENSE ATTY'S AFFIDAVIT IN RESPONSE TO RULE 61 MOTION.
114   03/25/2003                                    COOCH RICHARD R.
      ORDER: RULE 61. 1. THE STATE SHALL FILE A RESPONSE TO MR. WINSLOW
      AFFIDAVIT AND TO THE FACTUAL AND LEGAL ASSERTIONS IN DEFENDANT'S
```

SUPERIOR COURT CRIMINAL DOCKET                Page    12
( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON                  DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.        AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.            KEVIN WASHINGTON

|  | Event | | |
|---|---|---|---|
| No. | Date | Event | Judge |

--------------------------------------------------------------------------------
|  |  |  |  |
|---|---|---|---|
|  | | MOTION ON OR BEFORE APRIL 21, 2003, SERVING THE RESPONSE ON MR. WINSLOW AND ON MOVANT. 2. ANY REPLY BY THE MOVANT TO THE STATE'S RESPONSE AND TO MR. WINSLOW'S AFFIDAVIT SHALL BE FILED ON OR BEFORE MAY 21, 2003. A COPY OF THE AFFIDAVIT OF L.DALLAS WINSLOW, JR. DATED MARCH 13, 2002 IS ATTACHED FOR THE STATE AND FOR THE MOVANT. | |
| 115 | 03/31/2003 | | COOCH RICHARD R. |
|  | | MOTION FOR TRANSCRIPT FILED PRO SE.  REFERRED TO JUDGE COOCH. | |
| 118 | 04/17/2003 | | |
|  | | EMAIL FILED FROM RRC TO COUNSEL RE: STATE REQUESTING FOR EXTENSION OF TIME TO FILE RESPONSE **GRANTED | |
| 119 | 04/21/2003 | | |
|  | | EMAIL FILED FROM RRC TO COUNSEL. RE: RULE 61 | |
| 117 | 05/01/2003 | | COOCH RICHARD R. |
|  | | LETTER/ORDER ISSUED BY JUDGE: COOCH. RE: MOTION FOR TRANSCRIPTS.DENIED RE: | |
| 116 | 05/05/2003 | | |
|  | | STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF. FILED PRO SE | |
| 120 | 07/30/2003 | | COOCH RICHARD R. |
|  | | ORDER: ON DEFENDANT'S SECOND PRO SE MOTION FOR POSTCONVICTION RELIEF. DENIED IN PART, SUMMARILY DISMISSED IN PART. IT IS ORDERED. MOTION FOR DEFAULT JUDGEMENT I DENIED AS MOOT. | |
| 121 | 10/08/2004 | | |
|  | | MOTION FOR TRANSCRIPT FILED PRO SE.  REFERRED TO JUDGE COOCH | |
| 122 | 10/18/2004 | | COOCH RICHARD R. |
|  | | NOTICE OF NON-COMPLIANCE TO RULE 61 (MOTION FOR POSTCONVICTION RELIEF) SENT TO DEFENDANT. DEFENDANT'S MOTION FOR PRODUCTION OF THE GRAND JURY MUINUTES IS IN EFFECT A MOTION FOR POSTCONVICTION RELIEF. YOU MUST USE THE ATTACHED FORM. | |
| 123 | 10/29/2004 | | |
|  | | MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE REFERRED TO JUDGE COOCH. | |
| 124 | 11/03/2004 | | |
|  | | LETTER FROM A. HAIRSTON, PROTHONOTARY OFFICE  TO STEVEN WOOD, DAG RE: NOTICE OF FILING OF PRO SE MOTION FOR POSTCONVICTION RELIEF. ATTACHED: COPY OF MOTION. | |
| 127 | 11/05/2004 | | COOCH RICHARD R. |
|  | | ORDER OF BRIEFING THIS 5TH DAY OF NOVEMBER, 2004, THE DEFENDANT HAVING FILED A MOTION | |

```
                SUPERIOR COURT CRIMINAL DOCKET              Page   13
                      ( as of   02/08/2005 )
```

State of Delaware v.  KEVIN L WASHINGTON                DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.         AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.             KEVIN WASHINGTON

```
      Event
No.   Date           Event                          Judge
------------------------------------------------------------------------
```

      FOR POSTCONVICTION RELIEF AND ACCOMPANYING MEMORANDUM IN SUPPORT THERE
      OF PURSUANT TO SUPERIOR COURT CRIMINAL RULE 61 ON OCTOBER 29, 2004;
      IT IS ORDERED THAT:
      1) DEFENDANT'S PRIOR COUNSEL J. DALLAS WINSLOW, JR., ESQUIRE, SHALL
      FILE AN AFFIDAVIT WITH THE PROTHONOTARY RESPONDING REGARDING THE FAC-
      TUAL ALLEGATIONS OF THE INEFFECTIVE-ASSISTANCE-OF COUNSEL CLAIM(S)
      PURSUANT TO RULE 61(G)(2) ON OR BEFORE DECEMBER 6, 2005, SERVING THE
      AFFIDAVIT ON THE STATE AND ON THE MOVANT.
      2) THE DEPARTMENT OF JUSTICE SHALL FILE A LEGAL MEMORANDUM WITH THE
      PROTHONOTARY IN RESPONSE TO THE MOTION, TAKING INTO ACCOUNT THE FAC-
      TUAL ASSERTIONS IN BOTH THE MOTION AND TRIAL COUNSEL'S RESPONSE ON OR
      BEFORE JANUARY 7, 2005.
      3) ANY REPLY BY THE MOVANT SHALL BE FILED WITH THE PROTHONOTARY BY
      FEBRUARY 7, 2005.

125   11/18/2004
      DEFENDANT'S LETTER FILED. RE: RULE 61. MR. WASHINGTON INFORMS THE
      COURT THAT THE ORIGINAL BRIEFING SCHEDULE INDICATES THAT AN INCORRECT
      RESPONSE DATE.

126   11/18/2004                               COOCH RICHARD R.
      AMENDED ORDER OF BRIEFING: THIS 5TH DAY OF NOV, 2004 THE DEFENDATN HAV
      HAVING FILED A MOTION FOR POSTCONVICTION RELIEF AND ACCOMPANYING
      MEMORANDUM IN SUPPORT THEREOF PURSUANT TO SUPERIOR COURT CRIMINAL
      TLE 61 ON OCT 29, 2004: IT IS ORDERED THAT: (1) DEFENDANT'S PRIOR
      COUNSEL J. DALLA WINSLOW, JR., ESQ, SHALL FILE AN AFFIDAVIT WITH THE
      PROTHONOTARY RESPONDING REGARDING THE FACTUAL ALLEGATIONS OF THE
      INEFFECTIVE-ASSISTANCE OF COUNSEL CLAIM(S) PURSUANT TO RULE 61 (G)(2)
      ON OR BEOFRE DEC. 6, 04 SERVING THE AFFIDAVIT ON THE STATE AND ON THE
      MOVANT. (2) THE DEPT. OF JUSTICE SHALL FILE A LEGAL MEMORANDUM WITH
      THE PROTHONOTARY IN RESPONSE TO THE MOTION, TAKING INTO ACCOUNT THE
      FACTUAL ASSERTIONS IN BOTH THE MOTION AND TRIAL COUNSEL'S RESPONSE ON
      OR BEFORE JAN. 7, 05. (3) ANY REPLY BY THE MOVANT SHALL BE FILED WITH
      THE PROTHONOTARY BY FEB. 7, 2005

128   12/21/2004
      MOTION OF DEFAULT JUDGEMENT (PRO SE)  FILED.
      REFERRED TO JUDGE COOCH

129   12/27/2004
      LETTER FROM JUDGE COOCH  TO J. DALLAS WINSLOW, ESQ.
      AS I BELIEVE YOU ARE AWARE, DEFENDANT KEVIN WASHINGTON HAS FILED A
      MOTION FOR POSTCONVICTION RELIEF. I HAD ASKED FOR A RESPONSE OF
      AFFIDAVIT TO BE FILED BY YOU BY NOVEMBER 5. I DO UNDERSTAND THAT YOU
      HAVE HAD SOME DISCUSSIONS WITH MY SECRETARY ADVISING HER OF SOME
      DIFFICULTIES IN ACCESSING THE FILE, ETC., PARTICUALARLY IN LIGHT OF

```
                    SUPERIOR COURT CRIMINAL DOCKET                Page    14
                        ( as of  02/08/2005 )

State of Delaware v.  KEVIN L WASHINGTON                     DOB: 02/21/1963
State's Atty: ROBERT M GOFF , Esq.          AKA: KEVIN WASHINGTON
Defense Atty: JOSEPH A GABAY , Esq.              KEVIN WASHINGTON

        Event
No.    Date            Event                              Judge
-----------------------------------------------------------------------------
      YOUR HAVING LEFT THE OFFICE OF THE PUBLIC DEFENDER.
      A RESPONSIVE OF AFFIDAVIT BY YOU IS NEEDED AND MUST BE FILED ON OR
      BEFORE JANUARY 7. FOR YOUR INFORMATION, I ENCLOSE A COPY OF AN UNDATED
      "MOTION OF DEFAULT JUDGMENT" FILED ON DECEMBER 21, 2004 BY THE
      DEFENDANT WITH THE PROTHONOTARY RELATING TO THE FACT THAT YOUR
      AFFIDAVIT HAS NOT YET BEEN FILED. RRC
130   01/05/2005
      DEFENDANT'S LETTER FILED.TO JUDGE VAUGHN IN REFERENCE TO DEFENDANT'S
      MOTION FOR POSTCONVICTION RELIEF.
      REFERRED TO JUDGE VAUGHN
131   01/28/2005                                   COOCH RICHARD R.
      LETTER/ORDER ISSUED BY JUDGE COOCH TO COUNSEL
      THE COURT RECEIVED MR. WINSLOW'S AFFIDAVIT ON 1/21/05. ALTHOUGH,
      MR. WASHINGTON IS NOTED AS BEING COPIED ON MR. WINSLOW'S TRANSMITTAL,
      A COPY OF MR. WINSLOW'S LETTER TO THE COURT OF 1/21/05 AND HIS
      AFFIDAVIT IS ADDITIONALLY ENCLOSED FOR BOTH OF YOU.
      THE REVISED BRIEFING SCHEDULE IS NOW AS FOLLOWS:
      STATE'S RESPONSE SHALL BE DUE ON OR BEFORE 2/25/05, ANY REPLY BY
      KEVIN WASHINGTON SHALL BE FILED BY 3/25/05
      IT IS SO ORDERED, JUDGE COOCH
132   01/28/2005
      AFFIDAVIT OF DALLAS WINSLOW

            *** END OF DOCKET LISTING AS OF  02/08/2005 ***
                PRINTED BY: CSCACOL
```

207

| 1 ☐ D ☐ I ☐ SO ☐ RP | 2 NO. VICT'S 1 | 3 REPORT DATE 2-27-95 | 4 DEPARTMENT Wilmington P.D. | 5 PAGE 1 of 3 | 6 COMPLAINT NO. 95-4862 |

| 7 NAME (FIRST, MIDDLE) BATTLES, Tierra L. | 8 RACE, SEX, EQ. AGE BFN 8 | 9 D.O.B. 4-3-87 | 10 RESID PHONE 762-6452 | 11 BUS PHONE N/a |

| 12 ADDRESS 829 E 26th St | 13 RESIDENT ☒ FUL ☐ NON | 14 EMPLOYER/SCHOOL Ford Elementary |

| 15 LOCATION OF INCIDENT #12 | 16 GRID | 17 SECT 13 | 18 CTY 14A | 19 NO PREM | 20 TYPE PREMISE dwelling | 21 LOC CODE |

| 22 REPORTED Mo 2-27-95 | DAY | DATE | TIME 2110 | 23 OCCURRED Pending | DAY | DATE | TIME | TO | DAY | DATE | TIME | 24 INVOLVEMENT ☐ ALCOHOL ☐ DRUGS ☐ COMPUTER |

| 25 CRIME OR INCIDENT TITLE & SECTION Miscellaneous Incident | 26 UCR CLASS | 27 SUP CODE | 28 CRIM ACTIVITY |

| 29 4-F-14 SENT ☐ YES ☐ NO | DATE | 30 G.A. ☐ YES ☐ NO | 31 POINT OF ENTRY N/a | 32 NATURE OF INJURIES Pending | 33 WEAPONS MEANS/ATTACK Pending |

INDICATE RELATIONSHIP TO INVESTIGATION: W-1, W-2 WITNESS... NI NOT INTERVIEWED... RP REPORTING PERSON... P PARENT

| CODE | 34 NAME (L, F,M) | ADDRESS | PHONE |
|---|---|---|---|
| P-1 | Washington, Cynthia BF 28 | #12 | #10 |
| RP-1 | Reed SP | c/o Wilmington Hospital |  |
| NI-1 | Washington, Kevin Jr (3-20-89) | #12 | #10 |

| 35 EVID ☐ YES ☒ NO | PERFORMED BY | TYPE Pending |

| 36 METHOD OF OPERATION Suspect put his penis in victim's mouth and Vagina area | M.O. CLASS |

| 37-1 ☒ SUSPECT ☐ DEFENDANT (L, F,M) Washington, Kevin | 37-2 TYPE ARREST ☐ ON VIEW ☐ SUMMOND ☐ WARRANT | 37-3 V.O. | 37-4 RACE, SEX, EQ. AGE BMN 31 | 37-5 D.O.B. 2-21-63 | 37-6 RESIDENT ☐ FUL ☐ NON |

| 37-7 ADDRESS 14A #12 - present Border Hill IN Custody | 37-8 DESCRIPTION | 37-9 ARMED WITH none |

| 38-1 ☐ SUSPECT ☐ DEFENDANT | 38-2 TYPE ARREST ☐ ON VIEW ☐ SUMMOND ☐ WARRANT | 38-3 V.O. | 38-4 RACE, SEX, EQ. AGE | 38-5 D.O.B. | 38-6 RESIDENT ☐ FUL ☐ NON |

| 38-7 ADDRESS | 38-8 DESCRIPTION | 38-9 ARMED WITH |

| 39 SUSP VEH REG # STATE | YEAR | MAKE | MODEL | BODY | COLOR(S) | IDENTIFYING CHARACTERISTICS |

| CODE | PROPERTY TYPE | STOLEN - S, DAMAGED - D, RECOVERED - R, SEIZED - T | TYPE | I.D. NUMBER | VALUE |
|---|---|---|---|---|---|
|  | 40-1 |  |  |  |  |
|  | 40-2 |  |  |  |  |
|  | 40-3 |  |  |  |  |
|  | 40-4 |  |  |  |  |
|  | 40-5 |  |  |  |  |

| 41 DRUG TYPE | 42 DRUG QUANTITY | 43 DRUG MEASURE | 44 DATE RECOVER'D | 45 VALUE DAMG | 46 VALUE REC | 47 VALUE STOLEN |

| CODE | 48 CONTINUATION OF ABOVE ITEMS |
|---|---|
| NI-2 | Kevante Washington (9-27-91) 829 E 26th St 762-6452 |

14A - While working uniformed patrol this writer was dispatched to 829 E 26th St. in regards to a possible sexual offense. Upon my arrival I spoke w/ Ms. Cynthia Washington who related the following account.

| 132 DOMESTIC RELATED ☒ YES ☐ NO |

| 134 DOES VICT REQUEST NOTICE OF FUTURE PROCEEDINGS UPON ARREST ☐ YES ☐ NO | 133 SUSPECTED BIAS/ HATE INCIDENT ☐ YES ☒ NO | 49 DET NOTIFIED | 50 REFERRED TO | 51 SUPERVISOR APPROVAL |

| 52 REPORTING OFFICER Kelly E. Stotts | NO. DIV. #6718 | 53 STATUS ☐ UNFOUNDED ☒ PENDING - ACTIVE ☐ ARREST - ADULT | ☐ ARREST - JUV. ☐ PEND - INACTIVE ☐ SERVICE CLEAR | 54 EXCEPTIONAL CLEAR ☐ DEATH SUSPECT ☐ PROSECUTION DECLINED ☐ EXTRADITION DECLINED | ☐ NO V COOPERATION ☐ JUV NO CUSTODY ☐ ADMIN SANCTION |

| 55 REPORTING PERSON'S SIGNATURE |

| 56 SOLVABILITY FACTORS ☒ SUSP. NAMED | ☐ WIT ☐ SUSP LOCATED | ☐ M.O. | ☐ EVIDENCE | ☐ TRAC STOLEN ☐ SUSP DESCRIBED | ☒ SUSP VEH IDED ☐ SUSP IDED | 57 OFFICE FOLLOW-UP CLOSE |

DOC. # 45-06-78/06/06    DSP 6014 (10/93)

Page 5

1  the end of the case will be the actual declarants
2  testifying. So they testify prior to the
3  cross-examination, but we don't have to cut in between
4  direct and cross.
5      THE COURT: That was done -- apparently it's
6  becoming more and more done -- in the most recent case
7  that I had. Smith says it has to be -- they have to
8  be introduced no later than the conclusion of the
9  direct examination of the out-of-court declarant.
10     Any objection to this procedure, Mr.
11  Winslow?
12     MR. WINSLOW: No, Your Honor.
13     THE COURT: I gather -- any objection on
14  voluntariness grounds to any of the out-of-court
15  statements?
16     Are you referring to the alleged victim?
17     MR. GOFF: Victim and mother of the victim
18  who received the first disclosure.
19     THE COURT: So I understand then the State
20  will introduce those out-of-court statements even
21  before the out-of-court declarant even begins to
22  testify.
23     MR. GOFF: Correct.

Page 6

1      THE COURT: And I gather that comes in
2  without objection.
3      MR. WINSLOW: That's correct.
4      THE COURT: I looked at Smith to see whether
5  there is any reason why that can't be done. And I
6  think it can be done, especially with the consent of
7  the defendant.
8      MR. GOFF: I think the language itself says
9  no later than. I think that language itself implies
10  it can be earlier than direct examination.
11     THE COURT: Anything else?
12     MR. WINSLOW: Judge, nothing, except for the
13  fact as far as jury instructions are concerned for
14  tomorrow, I have no special request. There is no --
15  it's not an alibi defense. So there is no -- nothing
16  to ask for special for instructions.
17     THE COURT: What is the defense, if you're
18  able to say? I don't want to ask you to tip your
19  hand.
20     MR. WINSLOW: You're not asking me to tip my
21  hand, but you want to know what the defense is?
22     THE COURT: If you already tipped it to Mr.
23  Goff.

Page 7

1      MR. GOFF: I don't know that he has.
2      MR. WINSLOW: Well --
3      THE COURT: I don't need to know.
4      MR. WINSLOW: I'm just kidding, Judge. I'm
5  going to give an opening statement. I'm going to
6  basically tell the jury that mother is the one putting
7  the daughter up to this, we believe, and this is not
8  true and that Mr. Washington certainly didn't do any
9  of the acts he is accused of.
10     THE COURT: All right. It will be in the
11  hands of the jury. Let's go in. I'll apologize for
12  the delay which was caused by my having to attend to
13  another matter in another case.
14     MR. WINSLOW: Do you care to have an office
15  conference with respect to instructions tomorrow
16  morning before the start of the trial, like at 9:30?
17     What I anticipate happening is we may finish
18  the testimony, except for the doctor, today. I'm
19  always optimistic. I sometimes, obviously, turn out
20  to be wrong, but if that does, in fact, happen, I
21  would be available.
22     THE COURT: All right.
23     MR. GOFF: I would be available, too.

Page 8

1      THE COURT: Let's plan to have a prayer
2  conference at 9:30 tomorrow. Who knows? Maybe that
3  won't even be necessary if I can get the instructions
4  to you late this morning and you can look at them and
5  maybe give comments.
6      MR. WINSLOW: Just take your last trial's
7  instructions and dovetail them into this one.
8      THE COURT: Any rule except for the Lolly
9  instruction I gave in that case? That's another story
10  for another time.
11     Any 609 issues if the defendant takes the
12  stand?
13     MR. GOFF: You mean his prior record?
14     THE COURT: Yes.
15     MR. WINSLOW: Yes.
16     MR. GOFF: He has convictions for criminal
17  impersonation, two of them. He has a conviction for
18  forgery in the third degree, which is a crime of
19  dishonesty as well.
20     THE COURT: If --
21     MR. GOFF: I don't remember if he has a
22  felony charge.
23     MR. WINSLOW: He doesn't have a felony that

```
 1              ... ALLEN DeJONG, M.D.,
 2    having been duly sworn according to law, was examined
 3    and testified as follows...
 4              MR. GOFF:  Good morning, ladies and gentlemen
 5    of the jury.
 6              THE JURY:  Good morning.
 7                  DIRECT EXAMINATION
 8    BY MR. GOFF:
 9         Q.  Good morning, Doctor.
10         A.  Good morning.
11         Q.  You work for the A.I. duPont Hospital, I
12    guess, most of the time?
13         A.  Yes, that's true.
14         Q.  Okay.  What do you do for the hospital?
15         A.  I am medical director of the Care Program,
16    which is a child at risk evaluation program.  This
17    program essentially is to help evaluate physically and
18    sexually abused and neglected children.
19         Q.  And you're a medical doctor, are you not?
20         A.  That's correct, I'm a pediatrician.
21         Q.  And do you have any speciality for your
22    practice?
23         A.  Well, my speciality is the area of physical
```



DeJong, M.D. - Direct

25

1    and sexual abuse of children, although I am trained as
2    a general pediatrician.
3        Q.    And did you obtain -- if you could go through
4    with us some of the education as well as training
5    experience that you've had in your professional life.
6        A.    I went to undergraduate school at Colgate
7    University, then attended Cornell University Medical
8    College, graduating with my M.D. degree in 1974.
9    Following that I took the traditional three years of
10   additional training to become a board-certified
11   pediatrician.  And that is a year of internship and
12   two years of additional residency training.  And that
13   was at the University of Michigan Medical Center.
14           Following that, I elected to take one
15   additional year of training called fellowship
16   training.  And that was in community and ambulatory
17   pediatrics at the University of Rochester Medical
18   Center.  And following that I took my first real job
19   at Jefferson Medical College, at Thomas Jefferson
20   University Hospital in Philadelphia.  And that was in
21   1978.
22       Q.    Okay.  And during the course of your practice
23   has your speciality or focus developed on evaluating



DeJong, M.D. - Direct

1  children for physical and sexual abuse?

2      A.   Yes.  Shortly after coming to Jefferson in

3  1978 I began evaluating children for suspected sexual

4  abuse.  At that time Jefferson was one of the two

5  hospitals in the city of Philadelphia that was

6  evaluating both adult and child victims of suspected

7  sexual abuse.  By 1980 I had developed a special

8  program for the evaluation of sexually abused children

9  at Jefferson.  I continue to do that, and continue to

10  do that up to the present day.

11         However, Jefferson has affiliated with the

12  duPont Hospital for Children.  And in the past several

13  years I've been spending increasing amounts of time

14  doing the same type of job at duPont Hospital for

15  Children.  And as of a year ago I became a full-time

16  employee at duPont Hospital for Children in the area

17  of evaluation of physically and sexually abused

18  children.  I still go one day a week to Jefferson,

19  continue my work in that area at Jefferson.

20      Q.   Okay.  And during the course of your career

21  doing this specific type of treatment and diagnosis,

22  have you had occasion to observe and diagnose children

23  who have complained of histories of sexual abuse?

DeJong, M.D. - Direct

27

1        A.    Yes, I have.

2        Q.    Okay.  And during the course of this time,

3   how many children do you think you've actually seen in

4   that regard?

5        A.    At this point it's over 3,000 children.

6        Q.    Have you also been called upon to review

7   charts and cases of children seen by other doctors

8   also presenting with histories of sexual abuse?

9        A.    Yes, I have.

10       Q.    And is that many times as well?

11       A.    I would say that's in the hundreds.  I'm not

12   exactly sure of the number.

13       Q.    I direct your attention back to March --

14   well, I will direct yourself to the record of a March

15   15, 1995 examination of one Tierra Battles, a then

16   eight-year-old child.  Have you had occasion to review

17   the records of that examination?

18       A.    Yes, I did.

19       Q.    And with regard to that examination, she was

20   examined specifically as to her genitalia, was she

21   not?

22       A.    Yes, she was.

23       Q.    And, if you could, did you bring those



DeJong, M.D. - Direct

28

1    records with you here today?

2        A.    I did bring a copy --

3        Q.    Okay.

4        A.    -- of the medical report.

5        Q.    Now, with regard to that examination, were

6    there any findings of any physical or specific

7    physical abnormalities which are associated with

8    sexual abuse?

9        A.    There were no specific physical abnormalities

10   which would be specific for her diagnostic of sexual

11   abuse.

12       Q.    Okay.  What is noted specifically, if you

13   could tell this jury, as to the examination?

14       A.    Okay.  Specifically as to the examination of

15   the genital and anal areas, the genitalia, the labia

16   have no injury or lesions.  There is a minimal

17   increased pigmentation and minimal rugae.  Rugae is

18   the folds.  Normal clitoral hood.  Urethral orifice,

19   no inflammation.  Hymenal orifice, approximately three

20   to four millimeters in the knee-chest position.  All

21   edges smooth and glistening.  No visual lesions or

22   evident scars.  There is no evidence of significant

23   discharge or odor on today's examination.  Anus, no



A - 214

DeJong, M.D. - Direct

29

*a lesion = An abnormal structural change in the body due to injury or disease!*

1  evidence of lesions, comma, injury, nonpatulous,

2  normal appearing tone.

3      Q.    Okay.  What does nonpatulous mean?

4      A.    Nonpatulous means doesn't flop wide open,

5  doesn't flop wide open spontaneously on itself.

6      Q.    And before we move on, a slight increase in

7  pigmentation, if you could, is that a normal variant

8  that one might see?

9      A.    Slight increased pigmentation can be a normal

10 variant.  Sometimes it's the result of some kind of

11 irritation in the genital area, but that irritation

12 can be often related to hygiene kind of issues, so to

13 speak, not specific variants.

14     Q.    So it can be as to hygiene or any kind of

15 irritation?

16     A.    Any kind of irritation.

17     Q.    Sexual abuse type of irritation?

18     A.    That could.  Any kind of tearings, including

19 sexual abuse, could cause it, but it's not specific

20 for sexual abuse.

21     Q.    I'm unfamiliar with the term "rugae, minimal

22 rugae."

23     A.    Rugae.

DeJong, M.D. - Direct

30

1     Q.   Okay.  Could you explain what that means with

2    regard to, I guess, the front genitalia?

3     A.   The rugae are simply folds or wrinkles.  And

4    folds or wrinkles in the skin over the genital area

5    can be, again, a normal variation, sometimes

6    relatively smooth, sometimes little folds or wrinkles.

7     Q.   And that is a normal variation that's

8    non-specific as to anything?

9     A.   Normal variation.

10     Q.   Okay.  Now, this is an eight-year-old girl,

11   Doctor.  I assume that you have had occasion to

12   examine many eight-year-old girls' genital area

13   because of the nature of your practice?

14     A.   Yes.

15     Q.   Okay.  If you could describe to the jury the

16   anatomy, I guess it is, of the genitalia, moving from

17   the outside, I guess, inward into the body, and

18   describe that to the jury, please.

19     A.   Okay.  Sometimes the best way to think of it

20   is think of it as if the structures are somewhat like

21   a funnel. The bowl of the funnel extends downward,

22   narrows at certain points and meets the neck of the

23   funnel.  Now, when we're talking about the bowl of the

1    funnel, the bowl of the funnel is created by the

2    labia, the outer lips and the inner lips.  And

3    although it is a bowl, it is more of a bowl only when

4    those lips are pulled apart and separated, it becomes

5    a bowl-shaped depression.  That bowl-shaped depression

6    between the labia as they're separated is called the

7    vaginal vestibule.  Ultimately the labia go down, pull

8    on them, they kind of fold together, and the bowl is a

9    collapsible bowl, but it still becomes a bowl when you

10    stretch it apart.  So the rim of the bowl is created

11    by the labia.

12         At the top end, towards the belly button, is

13    where the clitoris and clitoral hood is.  At the

14    bottom, where the labia come together, we often call

15    that the posterior fourchette or posterior

16    commissure.  So there's the bowl structures, and the

17    bowl itself is called the vaginal vestibule.  Now, at

18    the bottom of the bowl where it narrows down is

19    actually where the hymen is.  And the hymen is simply

20    a small piece of tissue that partially covers the

21    opening from that vaginal vestibule into the vaginal

22    canal.

23         The vaginal canal becomes the neck of the

DeJong, M.D. - Direct

( 32

1    funnel.  So, to review again, there's the bowl which

2    is created by essentially the walls of the labia, the

3    bowl itself, the space is called the vaginal

4    vestibule.  Where it narrows down at the bottom it has

5    this partial covering called the hymen.  At the

6    narrowest point where it meets the neck of the funnel

7    is the vaginal canal.

8        Q.    Okay.  So what we're describing here is a

9    three-dimensional progression, I guess, from the

10   opening at the outer lips through the inner lips, or

11   the labia minora, into this bowl, as it were, and then

12   you proceed, at the end of the neck is the hymen?

13       A.    At the outer end, outer end of the neck, more

14   external toward the surface is where the hymen is, and

15   it extends.  And from the hymen deep into the body

16   extends the vaginal canal.

17       Q.    So it's like a tube and then something

18   opening up a little bit at the end of that tube?

19       A.    Well, actually, the more open space is the

20   external space.  The bowl of the funnel is the more

21   open space.  It does narrow done at the very neck of

22   the funnel to the narrowest point, and it opens up

23   slightly into the neck of the vaginal canal, but

A - 218

DeJong, M.D. - Direct

34

1    area?

2        A.    Based on the medical record, what is

3    documented in the medical record itself is that she

4    had relayed that her father had put a part of his body

5    inside her, inside her bottom.  And that's what's

6    documented in the medical record.

7        Q.    Okay.  If I were to present to you a

8    hypothetical situation where a child of eight had

9    stated that her father had placed his penis or private

10   part penetrating or into her private part, would that

11   be consistent or inconsistent with the examination

12   presented on March 15 of '95?

13       A.    That would be consistent with the physical

14   examination.

15       Q.    How could that be consistent if there's no

16   specific findings as to damage to the genitalia of

17   that child?

18       A.    Well, it can be consistent, because when you

19   say inside, inside for the child is somewhere between

20   the labia or somewhere deep to the surface of the

21   labia.  And, as I explained before, the areas between

22   the labia, the vaginal vestibule is a fairly large

23   sized opening.  And putting an object in that large



A - 219

1  opening doesn't necessarily have to create damage.

2  The deeper one goes, when it gets down towards the

3  more narrow part, such as the hymen and the vaginal

4  canal, there still is a certain amount of flexibility

5  to those structures.  But since they are more narrow,

6  the deeper the penetration, the more likely there is

7  to be significant damage.

8      Q.   In your experience and in your practice and

9  having examined all these children, these female

10  children, is it uncommon for a child to present with a

11  history of vaginal penetration and present with no

12  specific findings of abuse?

13      ' A.   It's quite common to find that the children

14  who present exactly with that history have no specific

15  physical findings.

16      Q.   Now, with regard to the anal examination,

17  again, there was really no specific findings; is that

18  correct?

19      A.   That's right, there are no specific physical

20  findings.

21      Q.   Can you state with there being anal

22  penetration by an adult male at some level whether it

23  is possible to have no specific findings there?



DeJong, M.D. - Direct

36

1    A.    That certainly is possible to have no

2    specific findings there.   The anal opening is even

3    more flexible than the vaginal vestibule would be.

4    And it has to be very, very flexible so that bowel

5    movements can pass out of the anal opening and yet be

6    flexible enough to clamp down and not let anal

7    contents simply run out.   So there's a lot of

8    stretchability and flexibility and adaptability to

9    being tightly closed when it needs to be and being

10   wide open when it also needs to be wide open.   So that

11   nature of the flexibility allows penetration to occur

12   without necessarily causing any permanent damage.

13   Q.    With regard to both the anal area and with

14   regard to, I guess, hymenal and other damages to the

15   genital area of a child, could you please discuss for

16   the jury the effect of a, perhaps, late report or the

17   passage of time between actual sexual molestation and

18   observation by a physician?

19   A.    Yes.  Most of the injuries we see in sexual

20   abuse are injuries that we see immediately are acute

21   injuries.  And by "acute injuries" I mean things such

22   as bruising, swelling, surface scrapes or surface

23   lacerations or tears.  And all of these kinds of



A - 221

DeJong, M.D. - Direct

37

1  things can heal very rapidly.

2        In fact, in examining children, sometimes

3  even as little as 48 hours between seeing an acute

4  abrasion or laceration in this area and then seeing

5  them 48 hours later, that laceration or surface

6  abrasion may disappear into a little bit of redness.

7  And a little bit of redness is something that we see

8  fairly common in the genital area of children.  So

9  there's minor injuries that can heal very, very

10  rapidly and certainly would be completely gone without

11  any scarring within a period of a week to two weeks.

12     Q.    Okay.  So injuries to these areas occur

13  without scarring on a frequent basis?

14     A.    That is correct.

15     Q.    And because they're children, they heal

16  quickly, it sounds?

17     A.    They heal quickly because they're children,

18  in part.  But also injuries in certain areas of the

19  body tend to heal more quickly than in other areas of

20  the body.  Areas of the body that have the best blood

21  supply heal more quickly than areas that have

22  relatively poor blood supply.  Therefore, areas of the

23  body such as the genital area and the anal area

DeJong, M.D. - Direct

38

1    actually heal faster because they have a very rich

2    blood supply compared to some other parts of the

3    body, such as the tip of the finger or the tip of the

4    toe.

5        Q.   So, I guess the history presented both by

6    this report and also as we've discussed here in court,

7    is consistent with the evaluation?

8        A.   That's correct.

9        Q.   And it's also, on the other side of it,

10   however, the examination is also consistent with there

11   being no sexual abuse.  Is that fair to say?

12       A.   In the absence of a history of sexual abuse,

13   this child has a normal or a variation of normal as

14   far as her genital and anal examination, and therefore

15   could be consistent with sexual abuse not having

16   occurred.

17           MR. GOFF:  Thank you, Doctor.  I have no

18   further questions.  I imagine Mr. Winslow may.

19           THE COURT:  Mr. Winslow, you may

20   cross-examine.

21           MR. WINSLOW:  Thank you very much, your

22   Honor.

23

A-223

CROSS-EXAMINATION

BY MR. WINSLOW:

Q.    Good morning, Doctor.

A.    Good morning.

Q.    Doctor, assuming that all the facts you already have in your brain happened, let's also add to that the fact that there's been some testimony in this matter that the man in question got on top of the eight-year-old and went up and down.  From that I think one could infer that there was some physical movement or action that caused some force downward in the vaginal area.  Would that increase or decrease the chances for some physical findings in the genitalia?

A.    It would depend on what the up and down motion actually was and how the penis was being moved in those particular structures.

Q.    Let's assume for the sake of our discussion here today that the penis had penetrated the vagina and was inside the labia for purposes of this discussion.

A.    Inside the labia --

Q.    It was an erection, as well.

A.    Erect penis inside the labia.  It would

1    depend on whether the penis was inside the labia, so

2    that the side of the shaft of the penis was rubbing in

3    between the labia parallel to the surface of the skin,

4    or whether it was perpendicular to the surface of the

5    skin between the labia, and the point was being thrust

6    deeply into the vaginal area.

7            The movement up and down could simply be the

8    side of the shaft of the penis rubbing between the

9    labia in the vaginal vestibule inside the labia.  But

10   that would not reach down to the level of the narrow

11   structures, the hymen and the vaginal canal.  If the

12   point of that penis were directed perpendicular to the

13   surface of the skin directed more deeply and through

14   the hymen, there certainly is a higher chance of both

15   acute injury and lasting injury.

16      Q.   Doctor, just for our knowledge, what's the

17   distance approximately in an eight-year old girl from

18   the outer limits of the labia to the hymen?

19      A.   It's somewhat variable.  And it sometimes

20   depends on just some general physical differences in

21   people.  It also depends on how heavy or relatively

22   thin the child is.  But in a child of this age it

23   would probably be somewhere between three quarters of



A - 225

DeJong, M.D. - Cross

41

1    an inch to an inch and a half, maybe an inch and three

2    quarters from the very surface of the labia.

3        Q.   And do you have any present recollection as

4    to the young girl in question?

5        A.   I did not examine this particular child.

6        Q.   Well, I can't recognize the doctor's

7    signature at the bottom of the page, so I thought it

8    was yours, but obviously I'm mistaken.  But as far as

9    the record is concerned, was the patient calm,

10   nervous?  What was the status of the patient?

11       A.   What's written in the examination in the

12   record by Dr. Katz, who did the examination, on exam,

13   quiet and serious appearing girl.  Answers questions

14   clearly but not volunteering information.  That is the

15   description of her.

16       Q.   And who is present, if anybody, with the

17   young lady involved?

18       A.   There's not a notation on Dr. Katz'

19   physical --

20       Q.   Do you have the social worker addendum?

21       A.   I do have the social worker addendum which

22   does describe that the mother of the child and Diane

23   Necastro, who is one of the social workers at duPont



A- 226

DeJong, M.D. - Cross

42

1    Hospital, were present in the room while the

2    examination was being done.

3        Q.   Let me direct your attention to what appears

4    to be the first, second, third full paragraph on that

5    page, beginning with the words or letters "PT," which

6    I'm sure is abbreviated for patient.

7        A.   Correct.

8        Q.   And ask you whether or not the mother was

9    supportive of the patient?

10       A.   Yes.   "Mother is supportive with patient and

11   obviously offers her encouragement in terms of

12   suggesting patient speak for herself."

13       Q.   And the last paragraph on the observations as

14   to the status, my knowledge of patient and mother when

15   the examination was over probably pretty commonly feel

16   this way?

17       A.   "At the end of visit mother and patient

18   seemed to be relieved that it was completed and had it

19   behind them."

20            MR. WINSLOW:   Thank you very much.

21            THE COURT:   Redirect examination, Mr. Goff.

22            MR. GOFF:   Your Honor, I think it's perhaps

23   appropriate, if I may...



A - 227

43

1                (Counsel confer.)

2                MR. WINSLOW:  Judge, I just wanted to read

3        this before I respond to Mr. Goff's question.

4                THE COURT:  Take what time you need.

5                MR. WINSLOW:  Frankly, I've read it once

6        already, but I just wanted to double-check.

7                THE COURT:  May I see the bailiff, please?

8                MR. GOFF:  Your Honor, I believe counsel has

9        agreed to allow the records of Dr. Katz' examination,

10       as well as the social worker Diane Necastro's notes of

11       this business to be introduced.  So I'm moving it in

12       as the next State's Exhibit.

13               THE COURT:  Without objection it will be

14       admitted as the next State's Exhibit.

15               THE CLERK:  Marked State's Exhibit 6, your

16       Honor.

17               MR. GOFF:  In view of that, your Honor, I

18       have no further questions of this witness.  I ask that

19       he be permitted to be excused.

20               MR. WINSLOW:  No objection, your Honor.

21               THE COURT:  You're excused from further

22       testimony in this trial.

23               THE WITNESS:  Thank you, your Honor.

A - 228

trial.

Rule 16(a) (1) (C): Documents and Tangible Objects.

Inspection of documents and tangible objects will be permitted upon reasonable notice and during normal business hours.  Please contact my office to arrange for a mutually convenient time for inspection.

Rule 16(a) (1) (D): Reports of Examinations and Tests.

Results or reports of mental or physical examinations and scientific tests or experiments which the State intends to use during its case-in-chief, or material to the defense:

Are enclosed.

Rule 16(a) (1) (E) Expert Witnesses.

The identity and substance of the opinions of expert witnesses:

None at this time.

Please be advised that this response, together with any acknowledgements of information to be supplied  when received, constitute the State's entire response to its discovery obligations under Rule 16 and/or any written request filed by the defendant.  If, prior to or during trial additional evidence or material is discovered which is subject to discovery - except to the extent referred to herein - is objected to as being outside the scope of the State's obligation under Rule 16.  Should you wish to pursue the matter further, please file a motion to compel further response as provided by Rule 16.

State's Reciprocal Discovery Request:

Pursuant to Superior Court Criminal Rule 16(b), please provide me with the following:

An opportunity to inspect and copy or photograph any books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial.

An opportunity to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that

1    be difficult.

2        THE COURT:  Well, that's true.  Why don't you

3    just cut up the label with a piece of scissors, write

4    in the tiniest possible handwriting "State's Exhibit

5    No. 1."  And it doesn't have to be the full sticker

6    size, half an inch by three quarters of an inch.

7        MR. GOFF:  Actually, I think it might be

8    No. 7, because I think that's what the old one was.

9        THE CLERK:  The older tape was the audiotape

10   of the victim.

11       MR. GOFF:  Never mind, your Honor, it's

12   correct.

13       THE COURT:  Mr. Winslow.

14       MR. WINSLOW:  Judge, with respect to the

15   instructions to the jury, after having heard

16   Ms. Battles testify, it seems to me that it would be

17   appropriate for me to ask that the Court also give a

18   lesser included for Counts Nos. I and III, based upon

19   the following rational:  First, the alleged victim

20   does not recall the so-called butt incident, or Count

21   No. III.  So that I think it would be appropriate for

22   me to argue that, number one, that did not occur, or,

23   secondly, there was no penetration, maybe only

1    contact.

2         With Count No. I, the testimony from the

3    alleged victim was that she was penetrated a tiny

4    bit.  And she denied that she would have been mistaken

5    about that.  But I do believe that argument would be

6    appropriate that she could have been mistaken in her

7    age and her ability to recollect the event, which does

8    not appear to be very strong.  So those are my two

9    requests.

10        THE COURT:  Let me make sure I understand.

11   Count III is a question -- let me hear the State's

12   position for an instruction on the lesser-included

13   offense of --

14        MR. WINSLOW:  Unlawful sexual contact.

15        THE COURT:  Second degree.

16        MR. GOFF:  Would have to be second degree,

17   your Honor.

18        THE COURT:  And as to Count I, the request is

19   for a lesser-included offense of, again, what,

20   Mr. Winslow?

21        MR. WINSLOW:  Unlawful sexual contact second,

22   your Honor.

23        THE COURT:  Any further requests about

1   lesser-includeds on any charge, Mr. Winslow?  And I'll

2   get the State's position.

3         The State's position, then, Mr. Goff?

4         MR. GOFF:  I'd like to say no, but I can't,

5   for the life of me, think of a reason why.  I guess

6   it's possible that under some rationale a jury might

7   find the contact as opposed to penetration.  So I'm

8   not going to object to either one of those two

9   lesser-included offenses.

10         THE COURT:  I will include them.  I think a

11   fair argument can be made that there's a, quote,

12   rational basis in the evidence, unquote, for the

13   lesser-includeds.  That's the standard under 206, so

14   I'll give them.

15         Any other things to take up before we

16   recess?  May I see counsel at sidebar on scheduling.

17         Anything else to take up before we meet --

18         MR. WINSLOW:  Does Court just recess and meet

19   in the robing room for scheduling purposes?

20         THE COURT:  If I can just talk to you for one

21   moment here.

22         (A sidebar, without stenographer, was held.)

23         THE COURT:  Just so other persons know, the

## Certificate of Service

I, KEVIN L. WASHington , hereby certify that I have served a true

and correct cop(ies) of the attached: Habeas Corpus / Appendix

_____ _____ upon the following

parties/person (s):

TO: Warden Thomas Carrell        TO: Attorney General

Delaware Correctional Center     M. Jane Brady

Smyrna, Delaware 19977           Carvel State office bldg,

_____          820. N. French Street

_____          Wilmington, DE 19801


TO: United States District       TO: _____
          Court

844 N, King Street lockbox 18    _____

Wilmington, Delaware 19801       _____

_____          _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this 28 day of November _____, 2005

# Certificate of Service

I, Kevin L. Washington , hereby certify that I have served a true

and correct cop(ies) of the attached: Habeas corpus / Appendix

_____ upon the following

parties/person (s):

TO: Warden Thomas Carrol

Delaware Correctional Center

Smyrna, Delaware 19977

_____

_____

TO: Attorney General

M. Jane Brady

Carvel State office bldg.

820. N. French street

Wilmington, De 19801

TO: United States District Court

_____

844 N. King Street lockbox 18

Wilmington, Delaware 19801

_____

TO: _____

_____

_____

_____

_____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road,  Smyrna, DE
19977.

On this  28  day of  November , 2005